UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2009 AUG 17   PM 4: 53

CLERK

BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| NORMAN WALKER, on behalf of himself and all others similarly situated,<br>　　　　　　Plaintiff | ) ) ) ) | |
| v. | ) ) | Docket No.  1:09-CV-190 |
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA – COLLEGE RETIREMENT AND EQUITIES FUND, (TIAA-CREF),<br>　　　　　　Defendant | ) ) ) ) ) | |

## COMPLAINT

### Nature of Action

1.　　　This is a class action for damages and equitable relief based on Defendant's wrongful practice of keeping customer accounts open for days or weeks after receiving instructions to close them, and retaining all investment income earned in the interim for itself. Defendant's actions violate its fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA) and common law, constitute conversion under common law, and constitute an unfair practice prohibited by the Vermont Consumer Fraud Act and similar "mini-FTC" acts in other states.  On behalf of himself and all others similarly situated, Plaintiff seeks restitution, compensatory damages, exemplary damages, and statutory attorney's fees.

GRAVEL AND SHEA
A PROFESSIONAL CORPORATION
P. O. BOX 369
BURLINGTON, VERMONT
05402-0369

<u>Jurisdiction and Venue</u>

2.     Federal jurisdiction over Plaintiff's ERISA claim is available under 28 U.S.C. § 1331, because the claim arises under the laws of the United States.  Jurisdiction over Plaintiff's state law claims is available under 28 U.S.C. § 1332(2)(A), since Plaintiff and other members of the class are citizens of different states and, on information and belief, the amount in controversy for the class exceeds $5 million.  Jurisdiction is also available under 28 U.S.C. § 1367, since such claims are so related to Plaintiff's ERISA claim that they form part of the same case and controversy.

3.     Venue is proper in the District of Vermont under 28 U.S.C. § 1391(a)(1), since Defendant is a corporation subject to personal jurisdiction in this state and therefore a resident for purposes of venue.  Venue is also proper under 28 U.S.C. § 1391(a)(2), since a substantial part of the events giving rise to Plaintiff's claims occurred here.

<u>Parties</u>

4.     Plaintiff Norman Walker is an Associate Professor of Business Administration at St. Michael's College and a resident of Charlotte, Vermont.  Professor Walker was the account owner of a TIAA-CREF retirement account from 1995 to 2007.

5.     Defendant TIAA-CREF is a corporation with offices located in New York, New York.  According to its website, TIAA-CREF has more than $400 billion under management and holds more than 3.2 million individual accounts.  TIAA-CREF's website also states that its "number-one priority is to ensure that all participants can rely on their transactions being processed in a timely manner."

<u>Facts</u>

6.      The St. Michael's College ("College") retirement plan ("Plan") consists of a Salary Deferral Arrangement under Section 403(b) of the Internal Revenue Code and a Money Purchase Plan under section 401(a) of the Internal Revenue Code (since converted to a profit-sharing plan under Section 401(k) of the Internal Revenue Code).

7.      Beginning in 1993, the College moved retirement assets of Plan participants which had been invested with various mutual funds, insurance companies, and banks to TIAA-CREF.

8.      In 2006, St. Michael's College, as administrator of the Plan, concluded that the funds offered by TIAA-CREF were not performing satisfactorily.  It directed Defendant TIAA-CREF to transfer retirement accounts belonging to Plan participants to Milliman USA, another mutual fund "platform" (i.e., a company offering investments in various mutual funds).

9.      Defendant refused to do so, claiming that the College had no authority to direct it to transfer such accounts.  According to Defendant, all TIAA-CREF accounts held by participants in the Plan were based on individual contracts between TIAA-CREF and the participants themselves.

10.      Based on Defendant's position, the Plan was forced to obtain individual signatures to the multiple forms required by TIAA-CREF in order to transfer or withdraw accounts.

11.      Eventually, the Plan gathered and submitted to Defendant the required signatures to transfer the retirement accounts of approximately 755 College employees, with assets of more than $36 million, from TIAA-CREF to Milliman USA.

12.     The parties agreed that the accounts, including the Plaintiff's account, would be transferred on May 1, 2007. All forms necessary for the transfer were provided to Defendant prior to that date.

13.     Notwithstanding the agreement that the amounts in Plaintiff's account would be transferred on May 1, 2007, Defendant did not in fact cut a check for Plaintiff's account until at least May 7, 2007. During the week between May 1 and May 7, 2007, the value of Plaintiff's account increased by several thousand dollars. The TIAA-CREF check cut on May 7, 2007, represented only the value of Plaintiff's account as of May 1, 2007, however.

14.     During the interval between May 1, 2007, and May 7, 2007, Defendant continued to invest the funds in Plaintiff's account for its own benefit and retained all investment profits for itself.

15.     Plaintiff never agreed, contractually or otherwise, to allow Defendant to invest his retirement funds for its own benefit, nor did Defendant ever disclose that it had any policy, practice, or intention of doing so. Plaintiff discovered what was going on only because he happened to check his account on-line after May 1, 2007, and found out that it was still open and invested.

16.     Defendant's Prospectus states, under "How to Transfer Money," that "transfers and cash withdrawals are effective at the end of the business day we receive your request and all required documentation." The Prospectus neither states nor suggests that Defendant may retain funds in client accounts after a withdrawal request and required documentation is received, or that it may invest such funds for its own benefit.

17.     On information and belief, it is Defendant's regular policy and practice to keep customer accounts open after the receipt of transfer or withdrawal requests and to invest such

accounts for its own benefit for periods of one to four weeks.  Indeed, rather than apologizing for

its practice, TIAA-CREF has attempted to defend it by stating that, had it suffered trading losses

on Plaintiff's account after May 1, 2007, it still would have paid the value of that account as of

May 1.  However, Defendant in fact made money trading on Plaintiff's retirement funds.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action on behalf of himself and as a class action under

F.R.Civ.P. 23(a) and (b)(3) on behalf of all members of the following Class:

> All individuals whose non-annuity type TIAA-CREF accounts have been retained
> and traded by TIAA-CREF for its own benefit after receipt by TIAA-CREF of a
> request for withdrawal or transfer with all necessary paperwork.

19.     Plaintiff does not know the exact number of Class Members because such

information is in the exclusive control of the Defendants.  Due to the nature of the conduct

involved, Plaintiff believes there are tens of thousands of Class Members, the exact number and

their identities being known by Defendant.

20.     The Class is so numerous that joinder of all Members is impracticable.

21.     There are questions of law and fact common to the Class, including:

    (a)     Whether Defendant has or had a practice or policy of retaining and

investing customer funds for its own benefit after receiving requests for

withdrawal or transfer and all necessary paperwork;

    (b)     When Defendant's policy or practice began and what its exact nature was;

    (c)     Whether Defendant's actions violated its fiduciary duties under ERISA or

common law;

    (d)     Whether Defendant's actions constitute conversion or a similar common

law tort;

(e)     Whether Defendant's actions violate the Vermont Consumer Fraud Act and similar "mini-FTC" statutes in other states forbidding unfair practices in commerce;

(f)     Whether Defendant concealed its practice or policy from Plaintiff and other Class Members, thereby extending the statute of limitations under ERISA, common law, or any other relevant statute;

(g)     Whether Defendant is liable to Plaintiff and other Class Members for compensatory damages and, if so, in what amount;

(h)     Whether Defendant is liable to Plaintiff and other Class Members for restitution and disgorgement and, if so, in what amount;

(i)     Whether Defendant is liable to Plaintiff and other Class Members for exemplary damages in addition to compensatory damages; and

(j)     Whether Defendant is liable to Plaintiff and other Class Members for reasonable attorney's fees.

22.     Plaintiff is a member of the Class.  His claims are typical of the claims of the Class Members, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff held and sought to transfer TIAA-CREF accounts.  His interests are coincident with, and not antagonistic to, those of the other members of the Class.

23.     Plaintiff is represented by counsel who is competent and experienced in handling ERISA, common law, consumer fraud, and class action litigation.

24.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

25.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

26.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records should exist. Prosecution as a class action will eliminate the possibility of repetitious litigation.  Treatment of the controversy as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  This class action presents no difficulties in management that would preclude maintenance as a class action.

COUNT I

ERISA Violations

27.     By asserting that it had individual relationships with Plaintiff outside of the St. Michael's College Plan and that the Plan had no authority to direct it to transfer Plaintiff's retirement accounts, Defendant must be deemed a fiduciary under section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

28.     By continuing to invest assets in Plaintiff's retirement account for its own benefit after Plaintiff directed it to transfer the account to another provider, Defendant exercised authority or control respecting the management or disposition of such account and must be deemed a fiduciary under section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

29.     An ERISA fiduciary is obligated to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . .

providing benefits to participants and their beneficiaries" under section 404(a) of ERISA, 29 U.S.C. § 1104(a).

30.     In investing retirement funds belonging to Plaintiff and others similarly situated for its own benefit after receiving written instructions to transfer them, Defendant was not acting solely in the interest of Plaintiff or for the exclusive purpose of providing benefits to Plaintiff or other participants in ERISA plans, as ERISA requires.

31.     In failing to disclose its policy and practice of investing retirement accounts for its own benefit after receiving written requests for transfer or distribution, and in stating in its Prospectus that "transfers and cash withdrawals are effective at the end of the business day we receive your request and all required documentation," Defendant made misleading statements and omissions in violation of its fiduciary duty of loyalty under Section 404(a) of ERISA, 29 U.S.C. § 1104.

32.     Defendant is liable for restitution to Plaintiff and others similarly situated for use of the funds in their retirement accounts and for the disgorgement of any investment profits made through the use of such funds under sections 409 and 502 of ERISA, 29 U.S.C. §§ 1109(a) and 1132.

33.     Under section 502 of ERISA, 29 U.S.C. § 1132, Defendant is liable for compensatory damages to Plaintiff and others similarly situated for breach of the fiduciary duties imposed by ERISA.

34.     Defendant is also liable for Plaintiff for the reasonable costs and attorney's fees of this action under Section 502(g)(1) of ERISA, 29 U.S.C. 1132(g)(1), as well as prejudgment interest.

## COUNT II

### Common Law Violations

35.     Defendant owed a fiduciary and contractual duty to act in the best interest of Plaintiff and other Class Members in handling their retirement accounts, including a duty to transfer or distribute funds in such accounts as soon as practicable upon receiving a written request to do so.

36.     In violation of its fiduciary and contractual duties, Defendant temporarily converted retirement funds belonging to Plaintiff and other Class Members to its own use and invested them for its own benefit after receiving written requests to transfer or distribute such funds.

37.     Although there was no practical impediment to transferring or distributing account funds promptly, Defendant routinely retained them for one to four weeks after receiving a written request for distribution or transfer.  During the one to four week period, Defendant invested the account funds for its own benefit and kept all investment proceeds which resulted.

38.     Defendant is liable to Plaintiff and other Class Members at common law for the value of the use of their funds or the actual amounts of investment proceeds earned during the unauthorized investment period, whichever is greater.

## COUNT III

### Consumer Fraud

39.     Defendant engaged in an unfair practice in commerce by investing the retirement account funds of Plaintiff and other Class Members for its own benefit after receiving written requests to transfer or distribute such funds.  Such practices are prohibited by the Vermont

Consumer Fraud Act, 9 Vt. Stat. Ann. §§ 2451 *et. seq.*, and by similar "mini-FTC" statutes in other states.

40.    Under 9 Vt. Stat. Ann. §§ 2451 *et. seq.* and similar "mini-FTC" statutes, Plaintiff and other Class Members are entitled to compensatory damages based on the unauthorized investment of their retirement account funds for Defendant's benefit, as well as exemplary damages not to exceed three times the amount of compensatory damages.  In addition, Plaintiff and other Class Members are entitled to the reasonable attorney's fees incurred in prosecuting this action.

## Relief

On behalf of themselves and all others similarly situated, Plaintiff requests the following relief:

(a)    Compensatory damages for Defendant's breach of its fiduciary duties under ERISA and common law;

(b)    Equitable relief in the form of restitution and disgorgement of investment profits;

(c)    Compensatory and exemplary damages under common law and the Vermont Consumer Fraud Act and similar "mini-FTC" acts of other states;

(d)    Reasonable attorney's fees and the costs of this action, as authorized by ERISA and the Vermont Consumer Fraud Act and similar "mini-FTC" acts of other states.

## JURY DEMAND

**Plaintiff demands a trial by jury on all issues so triable.**

Dated:          Burlington, Vermont
                August 17, 2009

*Norman Williams*
Norman Williams, Esq.
Gravel and Shea, A Professional Corporation
76 St. Paul Street, 7th Floor, P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
For Plaintiff