UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

NORMAN WALKER, on behalf of himself )
and all others similarly situated, )
          Plaintiff )
           )
v. ) Docket No. 1:09-CV-190
           )
TEACHERS INSURANCE AND ANNUITY )
ASSOCIATION OF AMERICA – COLLEGE )
RETIREMENT AND EQUITIES FUND, )
(TIAA-CREF), )
          Defendant )

PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO MOTION TO DISMISS

Preliminary Statement

Defendant TIAA-CREF routinely invests customer funds for its own account after receiving instructions from its customers to return or transfer such funds. It invested Plaintiff's retirement funds for its own account for a week after receiving written instructions to transfer them, for example, making several thousand dollars in the process. Complaint, ¶13.[1] TIAA-CREF's conduct is little different from a car dealer who uses as his own a car given to him to sell on consignment, or a broker who sends client redemption checks from a remote bank in order to

---

[1] TIAA-CREF states in its Responses to Plaintiff's First Set of Interrogatories dated October 21, 2009, that Plaintiff's account was transferred in a manner consistent with its policies and practices. *Id.*, ¶9.

GRAVEL AND SHEA
A PROFESSIONAL CORPORATION
P. O. BOX 369
BURLINGTON, VERMONT
05402-0369

take advantage of the "float." Both are liable at common law.[2] Simply put, one may not use another's property for profit without permission. Because TIAA-CREF hides its practice, it also runs afoul of state consumer fraud laws.

TIAA-CREF moves to dismiss Plaintiff's state law claims, not on the merits but on the grounds of ERISA preemption.[3] Relying primarily on *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), it urges that such claims are subject to what it characterizes as "ERISA's sweeping preemption provision" because they "relate to" a retirement plan. Def.'s Mem. at 1. According to TIAA-CREF, ERISA pre-emption is "deliberately expansive," and "state law contract and tort claims such as those asserted here, are routinely found preempted." *Id.* at 9, 10.

Not so. Since *Pilot Life*, "there has been a significant change in [ERISA] preemption analysis that necessitates revamping our once-broad view of its scope." *Gerosa v. Savasta & Co.*, 329 F.3d 317, 327 (2d Cir. 2003). The scope of ERISA pre-emption has been "greatly narrowed." *Hattem v. Schwarzenegger*, 449 F. 3d 423, 428 (2d Cir. 2008). A party seeking preemption now must overcome the "considerable burden" of a presumption that Congress did

---

[2] The car dealer is liable under the common law of conversion or trespass, depending on the extent of his use. *See* Restatement (2d) of Torts § 228; illus. 3 (conversion); §215 (trespass). The broker is liable for breach of fiduciary duty. *See Goodrich v. E.F. Hutton, Inc.*, 524 A.2d 1200 (Del. Ch. 1988).

[3] Although TIAA-CREF does not seek dismissal on the merits, it does suggest that its conduct was permissible. Because its prospectus states that it will make payment within seven days of receiving a customer request to close or transfer an account, TIAA-CREF asserts that it may invest the customer's funds for itself for those seven days. *See* Def.'s Mem. at 4. TIAA-CREF's position makes no more sense than a bailee, who has contracted to deliver stored goods within seven days, saying that he may use the stored goods after delivery is requested. *See* M.O. Regensteiner, Annotation, *Liability of Garageman for Theft or Unauthorized Use of Motor Vehicle*, 43 A.L.R. 2d 403, §21 (1955). Just as the stored goods are not the bailor's to use, the Plaintiff's funds are not TIAA-CREF's to invest. Any profits earned on them belong to the Plaintiff.

*not* intend to preempt traditional state law causes of action under ERISA. *See DeBuono v. NYSA-ILA Medical and Clinical Servs. Fund*, 520 U.S. 806, 814 (1997).

The "significant change in pre-emption analysis" is spelled out in the Supreme Court's decision in *DeBuono*, a case neither cited nor discussed by Defendant. *DeBuono* and the case law in this Circuit establish that a state law claim of general application which does not significantly interfere with ERISA plan administration will not be preempted. *See, e.g., Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996) (trust's common-law fraud claim against employer not preempted); *Gerosa* (union pension fund's common-law negligence claim against actuary not pre-empted); *Collins v. S.N.E.T.*, 617 F. Supp. 2d 67 (D. Conn. 2009) (former employee's state law discrimination claims against employer concerning severance package not preempted).

Plaintiff's state law causes of action fit that bill. They are claims of general application which have nothing to do with plan administration. Moreover, they are consistent with ERISA's overriding policy: to protect participants in employee benefit plans.

## Discussion

I.  CONTRARY TO DEFENDANT'S MEMORANDUM, ERISA PREEMPTION IS NO LONGER BASED ON WHETHER STATE CLAIMS "RELATE TO" AN ERISA PLAN IN THE "BROAD COMMON SENSE MEANING" OF THAT TERM. RATHER, STATE LAW CLAIMS ARE PREEMPTED ONLY IF THEY CONFLICT WITH UNDERLYING ERISA POLICIES.

   A.  <u>The Supreme Court Has Rejected An Expansive View Of ERISA Preemption And Instead Recognized A Strong Presumption That Congress Did *Not* Intend To Preempt State Law Of General Application</u>.

Defendant's Memorandum harks back to the Supreme Court's 1987 decision in *Pilot Life* and related cases. It argues that "Plaintiff's state-law claims are subject to ERISA's sweeping preemption provision and must be dismissed because they 'relate' to a pension plan governed by

ERISA." *Id.* at 1. It asserts that ERISA's preemption provision is "deliberately expansive." *Id.* at 8 (citing *Pilot Life*, 481 U.S. at 45-45). Relying on a case decided before *Pilot Life*, it maintains that the term "relate to" must be construed "broadly" and "in the normal sense of the phrase." *Id.* at 9 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). Finally, it says, "state law contract and tort claims of general application, such as those asserted here, are routinely found preempted where they have the necessary impermissible connection with an ERISA plan." *Id.* at 10 (citing *Pilot Life*).

TIAA-CREF neglects to point out that, in the words of the Second Circuit, the Supreme Court's 1995 decision in *N.Y. State Conf. of BC/BS Plans v. Traveler's Ins. Co.*, 514 U.S. 645 (1995) ("*Travelers*") "occasioned a significant change in preemption analysis, and required careful reconsideration of any preexisting precedent on the expansive view of 'related to' that held sway before it." *Gerosa*, 329 F.3d at 327. TIAA-CREF also fails to discuss the Supreme Court's 1997 decision in *DeBuono v. NYSA-ILA Medical and Clinical Servs. Fund*, 520 U.S. 806 (1997). That case "is significant because it signals a further retreat from the Court's previous view that ERISA preemption was 'deliberately expansive.'" *Collins*, 617 F. Supp. 2d at 73. As *Collins* explains, "*DeBuono* effectively demoted such statements to *obiter dicta* when it observed that in the earlier cases 'it had not been necessary to rely on the expansive character of ERISA's literal language in order to find preemption.'" *Id.* (quoting *DeBuono*, 520 U.S. at 813).

In *Travelers*, the Supreme Court considered whether a New York state surcharge on hospital and HMO patients not covered by Blue Cross/Blue Shield was pre-empted by ERISA. The Second Circuit had found preemption in the decision below. *See Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 718 (1994). Like TIAA-CREF, the Second Circuit had said that the term "related to" is to be accorded its "broad common sense meaning" to give "effect to the

'deliberately expansive' language chosen by Congress." *Id.* (quoting *Pilot Life*, 481 U.S. at 46). It had also held that "'a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans or the effect is only indirect.'" *Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)).[4]

The Supreme Court reversed. It observed that, if the term "relate to" "were taken literally to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for 'really, universally, relations stop nowhere.'" *Travelers*, 514 U.S. at 655 (quoting Henry James, Roderick Hudson xli (New York ed., World's Classics 1980)(1875).[5] Rather, the Court said, "in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 655 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Instead of applying the term "relate to" according to its "broad common-sense" meaning, *Travelers* concluded that "[w]e simply must go beyond the unhelpful text and frustrating difficulty of defining its key term and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." 514 U.S. at 656. "The basic thrust of the [ERISA] pre-emption clause," it said, "was to avoid a multiplicity of

---

[4] TIAA-CREF makes precisely this argument in the instant case. *Cf.* Defendant's Memorandum at 8-10.

[5] Justice Scalia has similarly remarked that "applying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." *Cal. Div'n of Labor Stds. Enforcement v. Dillingham Const., N.A.*, 519 U.S. 316, 355 (1997) (Scalia, J., concurring).

regulation in order to permit the nationally uniform administration of employee benefit plans." *Id.* at 657.

Applying that policy, *Travelers* found that New York's surcharge was *not* preempted. It reached that conclusion even though such charges "do make the Blues more attractive (or less unattractive) as insurance alternatives and thus have an indirect economic effect on choices made by insurance buyers, including ERISA buyers." 514 U.S. at 659. The Court held that Congress did not intend to preempt state laws that only affect ERISA plans indirectly, as long as such laws do not "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Id.* at 668. The New York surcharge passed that test. *Id.*

The Court confirmed its change of course in even stronger terms two years later in *DeBuono*. *DeBuono* again involved a New York state tax, which the Second Circuit had again held was preempted. The Second Circuit had found that the tax "depletes the fund directly, and thus has an immediate impact on the operations of an ERISA plan." *NYSA-ILA Medical and Clinical Servs. Fund v. Axelrod*, 74 F.3d 28, 30 (2d Cir. 1996).

Reversing, the Supreme Court criticized the Second Circuit for relying "on an expansive and literal interpretation of the words 'relate to' in §514(a) of ERISA." *DeBuono*, 520 U.S. at 812. It said the Second Circuit "fail[ed] to give proper weight to *Travelers*' rejection of a strictly literal reading of §514(a)." *Id.* at 812-13. The *DeBuono* Court emphasized that parties claiming ERISA preemption "bear the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *Id.*, 520 U.S. at 814 (quoting *Travelers*, 514 U.S. at 654). "Nothing in the operation of the [tax]," it said, "convinces us it is the type of state law Congress intended ERISA to supersede." *Id.* The Court gave four reasons:

1. New York has not forbidden a method of calculating benefits that federal law permits.

2. New York has not required employers to provide certain benefits (such as pregnancy or mental health).

3. The existence of a pension plan is not a critical element of a state law cause of action.

4. The tax statute at issue contains no provisions that expressly refer to ERISA or ERISA plans.

See id. at 815.

*DeBuono* concluded that "the [tax] is one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute." 520 U.S. at 815 (citations omitted). It explained that any state law "that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is preempted by the federal statute." *Id.*

B. Following *Travelers* And *DeBuono*, The Second Circuit Has Recognized That "The Supreme Court Has Greatly Narrowed The Scope" Of ERSIA Preemption.

The Second Circuit discussed *Travelers* and *DeBuono* at length in its recent decision in *Hattem v. Schwarzenegger*, 449 F.3d 423 (2d Cir. 2006). That case involved a challenge by AT&T's pension plan to California's unrelated business taxable income law ("UBTI") on the basis of ERISA preemption. See id. at 425-26. The Second Circuit rejected the challenge. *See id.* at 435.

*Hattem* stressed at the outset that, "[a]lthough a plain reading of this [ERISA preemption] statute lends itself to an extremely broad interpretation, the Supreme Court has greatly narrowed the scope of this section" and had "declined to interpret 'relate to' literally." *Id.*, 449 F.3d at 428. It also noted the Supreme Court's "starting presumption that Congress does *not* intend to

supplant state law." *Id.* (Emphasis added.) The Court characterized that presumption as a "heavy burden" for parties seeking pre-emption. *Id.*

With that presumption in mind, *Hattem* ruled that California's UBTI was not preempted by ERISA. "It is not sufficient," the Court explained, "that the law in question has an indirect economic effect on choices; rather, the law must actually dictate which choices *must* be made" by plan trustees. *Id.*, 449 F.3d at 429. Although the UBTI might make certain investments less attractive, "it does not force trust fiduciaries to act in a certain manner." *Id.* at 431-32. Further, the Court said, the fact that ERISA plans comprise a high percentage of the UBTI tax base does not mean the law is preempted. The critical point is that "California's UBTI laws do not single out ERISA plans." *Id.* at 433.[6]

    C.    <u>The Second Circuit And District Courts Within It Have Held That Under *Travelers* And *DeBuono* State Law Contract And Tort Actions Are *Not* Preempted</u>.

Again relying on *Pilot Life*, TIAA-CREF asserts that "state-law contract and tort claims of general application, such as those asserted here, are routinely found preempted where they have the necessary impermissible connection with an ERISA plan." Def.'s Mem. at 10. On the contrary, since the Supreme Court's decisions in *Travelers* and *DeBuono*, the Second Circuit has twice held that such claims are *not* preempted. *See Gerosa*, 329 F.3d 317 (2d Cir. 2003); *Geller*, 86 F.3d 18 (2d Cir. 1996). Lower courts in the Circuit have followed suit. *See, e.g., Collins*, 617 F.Supp. 2d 67 (D. Conn. 2009); *Knickerbocker Dialysis, Inc. v. Trueblue, Inc.*, 582 F.Supp. 2d

---

[6] *Hattem* characterized the "economic effect" issue as the "connection with" prong of the preemption test, and the "tax base" question as the "reference to" prong. *See id.*, 449 F.3d at 428. TIAA-CREF asserts here that Plaintiff's state law claims are preempted under the "connection with" prong. *See* Def.'s Mem. at 10. In *Travelers*, however, the Supreme Court pointed out that trying to construe "connection with" "is no more help than trying to construe 'relate to.' For the same reasons that infinite relations cannot be the measure of preemption, neither can infinite connections." *Id.*, 514 U.S. at 656.

364 (E.D.N.Y. 2008); *Skaggs v. Subway Real Estate Corp.*, 2006 WL 1042337 (D. Conn. 2006); *Denniston v. Taylor*, 2004 WL 226147 (S.D.N.Y. 2004).[7]

In *Geller*, a trust which provided medical benefits for members of the Greater New York Automobile Dealers Association sued a car dealer and member of the association for fraud. *See* 86 F.3d at 19. The trust alleged that one member, County Line Auto Sales, had enrolled the dealer's girlfriend for benefits as a full-time employee, even though she was not and had never been employed by the dealer at all. *See id.* at 20. The trust paid out more than $100,000 in benefits after the woman contracted cancer. *See id.*

Like TIAA-CREF, the defendant in *Geller* argued that the trust's common-law claims were pre-empted under section 514(a) of ERISA because they "related to" an employee benefit plan. *See id.*, 86 F.3d at 22. Rejecting that argument, the Second Circuit pointed out that Congress did not intend "to foreclose every state action with a conceivable effect upon ERISA plans." *Id.* Here, it said, "allowing the plaintiffs to pursue their common law fraud claim would in no way compromise the purpose of Congress and does not impede federal control over the regulation of employee benefit plans." *Id.* at 23. Moreover, the Court explained, "the essence of the plaintiff's fraud claim does not rely on the pension plan's operation or management." *Id.* Rather, "[t]he plan was only the context in which this garden variety fraud occurred." *Id.*

---

[7] Four other circuits have also ruled that state-law negligence and contract claims against third-party service providers are not preempted. *See Coldesina v. Estate of Simper*, 407 F.3d 1126 (10th Cir. 2005) (state law claims against accountant, insurer, and financial services company not preempted); *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692 (6th Cir. 2005) (employer's state law claim against non-fiduciary service provider for miscalculating value of life insurance policy not preempted); *LeBlanc v. Cahill*, 153 F.3d 134 (4th Cir. 1998) (trustees of pension fund may bring state law claims alleging fraudulent and misleading statements by third party); *Toumajian v. Frailey*, 135 F.3d 648 (9th Cir. 1998) (state law claims that defendant advisers were negligent with respect to setting up and administering pension plan not preempted).

The Second Circuit reached the same conclusion in *Gerosa*. There, a union pension fund brought state law claims for promissory estoppel, breach of contract, and professional malpractice against an actuary which had miscalculated the fund's financial condition. *Id.*, 329 F.3d at 320.[8] The district court dismissed the state law claims on the ground that they "related to" an ERISA regulated plan and were thus preempted. *See Gerosa v. Savasta*, 189 F.Supp. 2d 137, 146-153 (S.D.N.Y. 2002). Like TIAA-CREF here, the lower court in *Gerosa* asserted that "ERISA's preemption provision is broad, and has been interpreted broadly"; that "[t]he preemption clause is conspicuous for its breadth"; and that "[ERISA's] deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern." *Id.* at 146-47. It relied on *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281 (2d Cir. 1992), for the point that the ERISA preemption provision must be interpreted broadly. *See id.* at 145.

The Second Circuit reversed. The Court said it was "join[ing] a chorus of the Courts of Appeals in ruling that ERISA does not preempt 'run-of-the-mill' state-law professional negligence claims against non-fiduciaries." *Gerosa*, 329 F.3d at 323. It also overruled *Diduck*. *See id.* at 326-28. As the Court said, "[o]ur [broad] preemption analysis in *Diduck* . . . is no longer consistent with prevailing Supreme Court precedent." *Id.* at 327. It also noted: "the broad view of preemption appearing in *Diduck* is difficult to reconcile with our subsequent and narrower interpretation in *Geller*, 86 F.3d at 23." *Id.* at 328.

*Gerosa* began its analysis with "the general principle that preemption depends on whether state remedies are consistent with ERISA's core purposes." 329 F.3d at 325. "ERISA's principal goal," it said, is "to 'protect . . . the interests of participants in employee benefit plans

---

[8] The fund also brought an ERISA claim under 29 U.S.C. §1132(a)(3). *See id.*

and their beneficiaries.'" *Id.* at 328 (quoting 29 U.S.C. §1001(b)). The Court also stressed its "presumption that Congress does not intend to displace state law, especially in traditional areas of state control." *Id.*

*Gerosa* determined that there was "relatively little in the central purposes of ERISA that would weigh in favor of preempting the Plaintiff's claims." 329 F.3d at 328. It rejected the actuary's argument that preemption was required because "state resolution of disputes between plans and actuaries will necessarily involve the interpretation and application by various state courts of ERISA's actuarial standards." *Id.* Even if state standards require more than the ERISA statute itself, they "could only add to the protections afforded to the place and its beneficiaries." *Id.* at 329. Moreover, it pointed out, "ERISA does not create a fully insulated legal world for plans." *Id.* at 328 (internal quotation omitted). It concluded that "it is liability, not immunity, which ultimately can help ensure that the reporting and disclosures demanded by ERISA are made accurately." *Id.* at 329.

District courts in this Circuit have also recognized that state law claims are not preempted by ERISA under *Travelers* and *DeBuono*. In a very recent example, the district court for the District of Connecticut allowed state law claims involving Southern New England Telephone's ("SNET's") pension to go forward, rejecting its preemption argument. *See Collins v. So. New England Tel. Co.*, 617 F.Supp. 2d 67 (D. Conn. 2009). The plaintiff there charged that SNET had discriminated against him based on race in connection with a severance package. *See id.* at 69-70. *Collins* emphasized that the plaintiff's common-law claims "arise under laws of general applicability – none of those laws singles out ERISA plans, entities, or actors." *Id.* at 82-83. It ruled that such claims neither "referred to" nor were "connected with" an ERISA plan. *Id.* at 81-82. SNET's motion to dismiss was denied. *See id.* at 83-84. As *Collins* noted, "there is ample

precedent in the district courts of the Second Circuit to support this outcome." *Id.*, 617 F.Supp. 2d at 82.[9]

II.   **CONTROLLING PRECEDENT IN BOTH THE SUPREME COURT AND SECOND CIRCUIT MAKE CLEAR THAT PLAINTIFF'S STATE LAW CLAIMS IN THIS CASE ARE NOT PREEMPTED UNDER ERISA.**

    A.   <u>Plaintiff's State Law Claims Do Not "Seek To Control Or Supersede Central ERISA Functions."</u>

Given the Supreme Court's decisions in *Travelers* and *DeBuono*, and the Second Circuit's in *Geller*, *Gerosa*, and *Hattem*, this is not a close case. The controlling precedents in both Courts make clear that the phrase "related to" in section 504(a) of ERISA is not to be applied literally or broadly in determining preemption, contrary to Defendant's position. *See*

---

[9] TIAA-CREF cites the Second Circuit's decision in *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101 (2d Cir. 2008), in support of its preemption argument. *See* Def.'s Mem. at 9, 11, 15. *Paneccasio* bears little resemblance to the instant case, however. The plaintiff there brought claims against the trustees of his retirement plan and his employer – not a third-party service provider. *See Paneccasio*, 532 F.3d at 105-06. He asserted that his retirement plan was wrongfully terminated six months before he was due to retire. As a result, he received a lump sum payment rather than an annuity, and he lost his life insurance. *See id.* at 103.

*Paneccasio* affirmed the dismissal of the plaintiff's ERISA claims on the merits; his ADEA claim under the statute of limitations; and his common law claims on grounds of preemption. *See id.*, 532 F.2d at 104. The Court said that ERISA preempts state common law claims which seek "'to rectify a wrongful denial of benefits promised under an ERISA-regulated plan, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" *Id.* at 114 (quoting *Aetua Health Ins. v. Davila*, 542 U.S. 200, 214 (2004)). Here, *Paneccasio* said, "[e]ach claim is premised on the termination of the 1991 Plan and resulting denial of benefits under that Plan; each makes explicit reference to the Plan; and each would require reference to the Plan in the calculation of any recovery." *Id.* at 114.

In contrast to *Paneccasio*, Mr. Walker does not claim the wrongful denial of benefits promised under an ERISA-regulated plan. He claims the wrongful use his retirement funds by a third-party service provider. In addition, unlike *Paneccasio*, Mr. Walker *is* attempting to remedy the violation of a legal duty which is independent of ERISA; *viz.*, common-law fiduciary duty and state law consumer fraud. For all of these reasons, *Paneccasio* does not support preemption in this case.

*DeBuono*, 520 U.S. at 812. Rather, the focus is on ERISA's underlying policies. According to the Second Circuit, the "principal goal [is] to protect. . . the interests of participants in employee benefit plans and their beneficiaries." *Gerosa*, 329 F.3d at 327; 29 U.S.C. §1001(b). Both the Supreme Court and Second Circuit also agree that a party seeking preemption "bear[s] the considerable burden of overcoming 'the starting presumption that Congress does *not* intend to supplant state law.'" *DeBuono*, 520 U.S. at 814 (quoting *Travelers*, 514 U.S. at 654); *Hattem*, 449 F.3d at 428. Preemption may not be found "unless that was the clear and manifest purpose of Congress." *Travelers*, 514 U.S. at 428.

Seen through this lens, TIAA-CREF's arguments wilt under scrutiny. TIAA-CREF's first argument is that Plaintiff's claims are preempted because they "'seek to control or supersede central ERISA functions' by mandating a particular manner of processing under an ERISA-governed plan." Def.'s Mem. at 10 (quoting *Gerosa*, 329 F.3d at 324). According to TIAA-CREF, forcing it to disgorge profits obtained by using Plaintiff's funds without permission would "bind administrators to a[] particular choice" and "function as a regulation of an ERISA plan itself." *Id.* at 11 (quoting *Travelers*, 514 U.S. at 658-59).

The fundamental problem with TIAA-CREF's argument is that TIAA-CREF is not an ERISA plan administrator. It is a third-party which offers mutual funds to anyone, including ERISA plan administrators. St. Michael's College is Plaintiff's plan administrator. St. Michael's did not reach any agreement with TIAA-CREF allowing it to invest employee funds for its own profit. Requiring TIAA-CREF to disgorge such profits will in no way constrain St. Michael's College or its retirement plan. Such a remedy would benefit plan participants, just as superior returns on a TIAA-CREF mutual fund would. Neither superior returns nor

disgorgement would "supersede central ERISA functions" or "mandate[] employee benefit structures on their administration," however. *Cf.* Def.'s Mem. at 10, 11.

TIAA-CREF also asserts that requiring it to disgorge the profits it makes trading on customer funds would result in "exactly the kind of patchwork scheme of regulation that ERISA preemption prevents." Def.'s Mem. at 13 (internal quotation omitted). According to TIAA-CREF, that is because, in Vermont alone, it would have to transfer customer funds as soon as practicable without keeping the float for itself.[10] The Second Circuit rejected just such an argument in *Gerosa*, however. There, an ERISA plan's actuary was charged with negligence and breach of contract after it miscalculated funding levels. *See id.*, 329 F.3d at 320. Like TIAA-CREF, it argued that "state resolution of disputes between plans and actuaries will necessarily involve the interpretation and application by various courts of ERISA's actuarial standards, and (presumably) thereby at least complicate employees' and administrators' planning." *Id.* at 328. Such an approach, it said, violates ERISA's policy of nationally uniform administration: "ERISA demands that the core ERISA entities must have certainty as to the standards that will bind their actuaries, if not other outside actors." *Id.*

The Second Circuit rejected the argument. It noted first that ERISA does not create a "fully insulated legal world" for plans. *See Gerosa*, 329 F.3d at 328 (citation omitted). Rather, "they must deal with outsiders . . . under the same diverse hodge-podge of state law as any other economic actor." *Id.* (citation omitted). State standards, the Court emphasized, "while possibly

---

[10] TIAA-CREF appears to overlook the fact that Plaintiff has filed this case as a *nationwide* class action, not one confined to Vermont only. *See* Compl., ¶18. Assuming the class is certified, TIAA-CREF need not be concerned about different standards in different jurisdictions; it would be subject to the same requirements everywhere. *See* Fed.R.Civ.P. 23(b)(1)(A) advisory committee note to 1966 Amendment ("The felt necessity for a class action is greatest when . . . the possibility exists that the action might be called upon to act in inconsistent ways.").

inconsistent with one another, could only add to the protections afforded to the plan and its beneficiaries." *Id*, at 329. That is ERISA's "principal goal." *Id.* at 328. The main problem with the actuary's argument, however, was "the fact that it is liability, not immunity, which ultimately can help ensure that the reporting and disclosures demanded by ERISA are made accurately." *Gerosa*, 329 F.3d at 329. ERISA's equitable remedies, the Court said, "cannot compare to a common-law action for damages as a stimulant to adherence to the appropriate level of professional performance." *Id.* ERISA remedies alone "would leave the affected plan with no means for making up its shortfalls." *Id.* As the Second Circuit concluded, "we find it implausible that Congress intended such results." *Id.*

Like the defendant in *Gerosa*, TIAA-CREF also takes the position that not only are Plaintiff's state law claims preempted but that he also has no remedy under ERISA itself. *See* Def.'s Mem. at 17 n.6. If TIAA-CREF were correct, it would be able to use customer funds for its own profit with impunity. TIAA-CREF's position cannot be reconciled by *Gerosa*. *See also Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765 at 781-82 (7th Cir. 2002) (absence of ERISA damages weighs against preemption); *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 149 (2d Cir. 1999) (Supreme Court has "evidence[d] a clear intention to avoid construing ERISA in a manner that would leave beneficiaries . . . without any remedy at all.")[11] The fundamental policy of protecting plan beneficiaries, together with the strong presumption against preemption of traditional state law claims, doom TIAA-CREF's attempt to avoid Plaintiff's state law claims. Such claims must be heard and decided on their merits.

---

[11] *Gerosa* and the cases it cites may explain why TIAA-CREF did not also seek dismissal of Plaintiff's ERISA claim at this time. Footnote 6 of its Memorandum leaves little doubt as to its intentions, however.

B.   **TIAA-CREF Is Not Entitled To Preemption On The Ground That Plaintiff's Claims Depend On ERISA Or An ERISA Plan For Their Existence.**

TIAA-CREF also argues that Plaintiff's state law claims are preempted "because they do not arise independently of ERISA or the plan terms." Def.'s Mem. at 14-17. The short answer is that Plaintiff's claims are based on state laws (common law and the Consumer Fraud Act) of general applicability, exactly like the fraud claim in *Geller* and the negligence claim in *Gerosa*. As the Second Circuit noted in *Gerosa*, the presumption against preemption is "particularly strong" in such "garden variety" cases. *See id.*, 329 F.3d at 323.

The Second Circuit rejected preemption arguments identical to TIAA-CREF's in both *Geller* and *Gerosa*. In *Geller*, it announced that "allowing the plaintiffs to pursue their common law fraud claim would in no way compromise the purpose of Congress and does not impede federal control over the regulation of benefit plans." *Geller*, 86 F.3d at 23. Rather, "insuring the honest administration of financially sound plans is critical to the accomplishment of ERISA's mission." *Id.* In words which apply with equal force here, *Geller* said: "The unauthorized diminution of pension benefits – in the present case, the outright squandering of funds – is squarely at odds with the congressional purpose of protecting pension benefits." *Id.* Moreover, it concluded, the plaintiff's common law fraud claim "is not preempted simply because it may have a tangential impact on employee benefit plans." *Id.*

Like *Geller*, the *Gerosa* Court similarly stressed that ERISA's "principal goal is to protect . . . the interests of participants in employment benefit plans." *Id.*, 329 F.3d at 328. Immunizing an actuary charged with miscalculating benefit levels from common law negligence claims, it observed, "would leave the affected plan with no means for making up its shortfalls."

*Id.* at 329. "We therefore conclude," *Gerosa* said, "that, especially in light of our presumption in favor of preserving traditional state law, Congress cannot have intended to preempt the Trustees' unexceptional state-law claims." *Id.* at 330. "Any other result," it added, "would threaten the very purposes Congress had in mind when it enacted ERISA." *Id.*

*Geller* and *Gerosa* leave no room for TIAA-CREF's argument here. The Plaintiff here has also asserted straightforward and general state law causes of action. Neither is premised on the existence of ERISA or an ERISA plan. Had the Plaintiff purchased his TIAA-CREF mutual funds outside of his retirement plan, his state law claims would be identical. The real point, however, is that Plaintiff's state law claims are completely consistent with the Congressional policy of protecting ERISA plan participants and beneficiaries. TIAA-CREF's position is antithetical to that policy. The fact that Plaintiff's claims, if successful, "may have a tangential impact" on his benefits does not justify preemption. *Geller*, 86 F.3d at 23.[12]

C. The Third Circuit's Decision In <u>Kollman v. Hewitt Associates</u> Does Not Support Preemption In This Case.

TIAA-CREF's preemption argument relies heavily on the Third Circuit's decision in *Kollman v. Hewitt Assocs.*, 487 F.3d 139 (3d Cir. 2007). *See* Def.'s Mem. at 12, 14-15. There, a plan participant brought a professional negligence claim against Hewitt, a third party which provided administrative services for his employer's retirement plan. *See id.* at 141. Hewitt had

---

[12] This conclusion is also reinforced by the Second Circuit's decision in *Hattem*. Rejecting a preemption challenge there, the Court explained that ERISA does not "preempt a statute simply because the law's success depends on funds derived from ERISA plans." *Id.* 449 F.3d at 432 (internal quotations omitted). "A statute that functions irrespective of the existence of an ERISA plan," the Second Circuit explained, "is not preempted." *Id.* at 434. That language squarely applies to Plaintiff's state-law claims in the instant case.

given the plaintiff incorrect information about the amount in his retirement account, and he retired because of it. *See id.*

TIAA-CREF's reliance on *Kollman* is misplaced for two reasons. First, the Second Circuit would be unlikely to decide the case the same way. *Kollman* starts with the proposition that ERISA's preemption provision is "expansively applied." *Id.*, 487 F.3d at 150. As discussed above, the Second Circuit rejects that approach. *See, e.g., Gerosa*, 329 F.3d at 327 ("there has been a significant change in [ERISA] preemption analysis that necessitates revamping our once-broad view of its scope").[13] *Kollman* finds preemption based on a concern that "differing state court interpretations of the tort of professional malpractice would create obstacles to the uniformity of plan administration." *Id.*, 487 F.3d at 148. The Second Circuit considered and rejected that argument in *Gerosa*, noting that "ERISA does not create a fully insulated legal world for plans." *Id.*, 329 F.3d at 328. In *Geller*, it held that a common law fraud claim "is not preempted simply because it may have a tangential impact on employee benefit plans." *Id.*, 86 F.3d at 23.

Perhaps the most fundamental distinction between the Second and Third Circuits, however, is their view of Congressional intent. The Second Circuit emphasizes in both *Geller* and *Gerosa* that "ERISA's principal goal is to protect . . . the interests of participants in employee benefit plans and their beneficiaries." *Gerosa*, 329 F.3d at 328 (citing 29 U.S.C. §1001(b)); *see also Geller*, 86 F.3d at 23 ("unauthorized diminution of pension benefits . . . is squarely at odds with the congressional purpose of protecting pension benefits."). In *Kollman*, by contrast, the Court did not even mention that policy. Instead, it said, "the purpose of the

---

[13] To the contrary, in this Circuit a defendant must overcome the "considerable burden" of a presumption against preemption – particularly in areas traditionally governed by state law. *See, e.g., Hattem*, 449 F.3d at 428.

ERISA preemption is to eliminate claims that would interfere with the ERISA plans." *Id.*, 487 F.3d at 149. Although the Second Circuit recognizes that "administrative burdens of employers and plan administrators are also a significant concern," *Gerosa*, 329 F.3d at 328, it finds it "highly implausible that a Congress interested in disseminating precise and meaningful plan information would intentionally minimize the incentives for careful behavior of one of the primary guardians of reliable, objective data." *Id.* at 329.

Even if *Kollman* were controlling precedent in this Circuit, moreover, TIAA-CREF would not be entitled to preemption on the facts of this case. Unlike *Kollman*, this case does not involve a miscalculation of benefits. Rather, it concerns a claim for the undisclosed and unauthorized use of Plaintiff's retirement funds. Accordingly, unlike *Kollman*, the claims here do not "require a court to consider the Plan in detail." *Kollman*, 487 F.3d at 150. All a court needs to consider in detail are TIAA-CREF's practices. Moreover, *Kollman* emphasized that the beneficiary there had an ERISA remedy. *See id.* at 150 ("ERISA itself contains a civil enforcement scheme . . . which provides the mechanism for claims by beneficiaries or participants to question or challenge the provision or amount of benefits.")[14] In contrast, TIAA-CREF denies that any ERISA remedy is available. *See* Def.'s Mem. at 17 n.6.

---

[14] The Second Circuit also disagrees with the Third Circuit on this point. As it said in *Gerosa*, there is no "categorical rule barring state causes of action that might overlap with ERISA." *Id.*, 329 F.2d at 325. In *Gerosa*, it allowed just such a claim to proceed.

## Conclusion

TIAA-CREF reaches the wrong conclusion on preemption because it starts from the wrong premise. Contrary to TIAA-CREF's Memorandum, ERISA's preemption clause is not construed broadly. Rather, there is a strong presumption against preemption. As in *Gerosa*, allowing Plaintiff's state law claims to proceed is consistent with ERISA's principal goal of protecting the interests of plan participants – particularly since TIAA-CREF denies that Plaintiff has any remedy under ERISA itself.

Dated:     Burlington, Vermont
           December 29, 2009

/s/ *Norman Williams*
Norman Williams, Esq.
Gravel and Shea, A Professional Corporation
P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
For Plaintiff

<372310/7z9y011.DOC/NCW>