UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| NORMAN WALKER, on behalf of himself and all others similarly situated,<br>          *Plaintiff*,<br><br>v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA – COLLEGE RETIREMENT AND EQUITIES FUND, (TIAA-CREF),<br>          *Defendant*. | Docket No. 1:09-cv-190 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA'S MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT**

## TABLE OF CONTENTS

                                                                                                                           **Page**

INTRODUCTION ............................................................................................................................1

ARGUMENT ...................................................................................................................................3

I.      *TRAVELERS* AND *DEBUONO* DID NOT UPROOT WELL-SETTLED LAW, AND INSTEAD DEALT WITH THE FRINGES OF ERISA PREEMPTION NOT AT ISSUE HERE ......................................................................................................3

II.     PREEMPTION OF PLAINTIFF'S STATE-LAW CLAIMS IS PERFECTLY CONSISTENT WITH *GELLER* AND *GEROSA* ..............................................................5

III.    ERISA PREEMPTS PLAINTIFF'S STATE-LAW CLAIMS ............................................6

        A.     Plaintiff's State-Law Claims Are Preempted Because They Purport To Supersede and Control Core ERISA Functions .........................................................6

        B.     Plaintiff's State-Law Claims Are Preempted Because They Depend on Contested Interpretations of Documents Controlling How ERISA Plan Distributions Are Made ...............................................................................................9

        C.     Plaintiff's Car Dealer and Broker Analogies Are Inapt .........................................10

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Health Inc. v. Davila,*
  542 U.S. 200 (2004) ..................................................................................................... 2, 8

*Coldesina v. Estate of Simper,*
  407 F.3d 1126 (10th Cir. 2005) ........................................................................................ 6

*Collins v. S.N.E.T.,*
  617 F. Supp. 2d 67 (D. Conn. 2009) ............................................................................ 5, 6

*DeBuono v. NYSA-ILA Medical and Clinical Services Fund,*
  520 U.S. 806 (1997) .................................................................................................. 2, 3, 4

*Denniston v. Taylor,*
  No. 98-3579, 2004 WL 226147 (S.D.N.Y. Feb. 4, 2004) ................................................. 6

*Geller v. County Line Auto Sales, Inc.,*
  86 F.3d 18 (2d Cir. 1996) ................................................................................................. 5

*Gerosa v. Savasta & Co.,*
  329 F.3d 317 (2d Cir. 2003) ............................................................................................. 5

*Goodrich v. E.F. Hutton Group, Inc.,*
  542 A.2d 1200 (Del. Ch. 1998) ........................................................................................ 8

*Gregory v. Met. Life Ins. Co.,*
  No. 08-150, 2009 WL 2584834 (D. Vt. June 3, 2009) ..................................................... 7

*Hattem v. Schwarzenegger,*
  449 F.3d 423 (2d Cir. 2006) ............................................................................................. 4

*Kollman v. Hewitt Associates, Inc.,*
  487 F.3d 139 (2007) ......................................................................................................... 7

*LeBlanc v. Cahill,*
  153 F.3d 134 (4th Cir. 1998) ............................................................................................ 6

*Met. Life Ins. Co. v. Taylor,*
  481 U.S. 58 (1987) ....................................................................................................... 7, 9

*N.Y. State Conference of BC/BS Plans v. Travelers Insurance Co.,*
  514 U.S. 645 (1995) .................................................................................................passim

*Penny/Ohlman/Nieman, Inc. v. Miami Valley Pension Corp.,*
  399 F.3d 692 (6th Cir. 2005) ............................................................................................ 6

*Pilot Life Insurance Co. v. Dedeaux,*
  481 U.S. 41 (1987) ............................................................................................... 2, 7, 8, 9

*Skaggs v. Subway Real Estate Corp.,*
  No. 03-1412, 2006 WL 1042337 (D. Conn. Apr. 19, 2006) ............................................. 6

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Toumajian v. Frailey*,
    135 F.3d 648 (9th Cir. 1998) .................................................................................................6

**Statutes**

ERISA § 514(b)(4), 29 U.S.C. § 1144(b)(4) ..............................................................................2, 9

## INTRODUCTION

Plaintiff asserts ERISA and state-law claims that, if accepted, would require Teachers Insurance and Annuity Association of America ("TIAA") to process transfer or withdrawal requests under the ERISA plan at issue in a manner that is different from the one set forth in the governing prospectuses.[1] The prospectuses are even-handed. They provide that an accountholder is entitled to the value of the account's investment units on the effective date of the transfer or withdrawal regardless of any investment gains *or* declines he would have enjoyed or suffered had he chosen a later effective date. Notwithstanding this language, plaintiff's claims attempt to force TIAA to pay him for any investment gains *after* the effective date that he has chosen for his transfer request and before the date that the prospectuses require payment to be made to him. Unwilling to acknowledge the "heads I win, tails you lose" nature of his argument, plaintiff says nothing about whether he believes that customers would owe TIAA a refund if the investments *declined* in value between these two dates. In any event, plaintiff's own allegations show that TIAA handled his account transfer request in exactly the manner provided for in the prospectuses. (Mem. in Supp. 3-4.) Plaintiff's opposition does not, because it cannot, argue otherwise.

Nevertheless, plaintiff brings three claims against TIAA. He brings a claim not addressed in this motion, asserting that TIAA breached alleged fiduciary duties under ERISA.[2] He also asserts two state-law claims. He may not do so. ERISA § 514(a), 29 U.S.C. § 1144(a)

---

[1]    Plaintiff does not dispute that the prospectuses are incorporated by reference into the complaint and may be considered at the motion to dismiss stage. (*See* Mem. in Supp. 7-8.)

[2]    TIAA has chosen not to move to dismiss plaintiff's ERISA claim for now, but does not concede that the claim has any merit. (Mem. in Supp. 1-2 n.1, 17 n.6.)

Case 1:09-cv-00190-jgm   Document 16   Filed 01/19/10   Page 6 of 15

expressly preempts state laws that "relate to" an ERISA plan.[3] Under settled law, a state-law claim is preempted if it (1) purports to control or supersede central ERISA functions, such as the manner in which transfer or withdrawal requests are processed or benefits are calculated, or (2) turns on an interpretation of the documents that control how ERISA plan distributions are made. (*See* Mem. in Supp. 10-17.) Plaintiff's state-law claims fall squarely within ERISA's preemption provision for *both* reasons.

Plaintiff offers no persuasive response to TIAA's showing that these claims are preempted under settled precedent. *See infra* III.A-B. Notably, plaintiff does not dispute that his claims relate to his investments in *an ERISA plan*, as his own ERISA cause of action makes clear. Plaintiff's principal argument is that the established ERISA preemption case law has been uprooted by later decisions in *N.Y. State Conference of BC/BS Plans v. Travelers Insurance Co.*, 514 U.S. 645 (1995), and *DeBuono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806 (1997). Plaintiff is wrong. *Travelers* and *DeBuono* did reject the *dicta* in prior cases suggesting that ERISA § 514(a) had virtually no limits; but they *did not* call into question the settled principles, identified above, under which plaintiff's claims are preempted. Furthermore, in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), decided well after *Travelers* in 1995 and *DeBuono* in 1997, the Court relied heavily on *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 46 (1987), notwithstanding plaintiff's claim that *Pilot Life* has somehow been discredited. *See Aetna Health*, 542 U.S. at 208-210. Plaintiff does not bother to discuss *Aetna Health*.

Unable to take his claims outside the scope of ERISA preemption, plaintiff offers inapt analogies in an effort to paint TIAA as a converter of plaintiff's "property." Plaintiff asserts that

---

[3] There are limited exceptions to the preemption provision, *see, e.g.,* ERISA § 514(b)(4), 29 U.S.C. § 1144(b)(4) (providing that the "generally applicable *criminal* law of a State" is not preempted (emphasis added)), but none of them is relevant here—and plaintiff does not argue otherwise.

2

TIAA is akin to a car dealer who converts a car or a broker who intentionally delays the redemption of a check. (Mem. in Opp. 1-2.) These analogies are unfounded and misleading. *See infra* III.C. Neither the car dealer nor the broker is managing an ERISA plan. Further, the prospectuses confirm that a participant is entitled only to the value of his investment units on the effective date of the withdrawal or transfer; any gains that would have occurred after that date are not his property that can be "converted."

## ARGUMENT

### I. *TRAVELERS* AND *DEBUONO* DID NOT UPROOT WELL-SETTLED LAW, AND INSTEAD DEALT WITH THE FRINGES OF ERISA PREEMPTION NOT AT ISSUE HERE

Plaintiff's principal argument is that *Travelers* and *DeBuono* have completely unsettled ERISA preemption law. This argument is mistaken. Far from overruling all that came before, *Travelers* and *DeBuono* acknowledged that ERISA § 514(a) is "clearly expansive," *Travelers*, 514 U.S. at 655, and explicitly recognized their "fidelity to the views expressed in our prior opinions." *Id.* at 668; *see also DeBuono*, 520 U.S. at 813. *Travelers* and *DeBuono* are important not because they unsettled prior holdings, but because they recognized limits on the *outer reaches* of ERISA preemption. But this case involves the core of ERISA preemption, not its outer reaches.

The Court's efforts in *Travelers* and *DeBuono* to constrain ERISA preemption were needed because *dicta* in prior cases had implied that, taken literally, the "relate to" language of ERISA § 514(a) language was essentially limitless. *See, e.g., Travelers*, 514 U.S. at 655. Thus, the Court clarified in *Travelers* and *DeBuono* that ERISA § 514(a) does not reach so far as to preempt either (1) a New York statute requiring hospitals to collect surcharges from patients covered by a commercial insurer, *Travelers*, 514 U.S. at 649-51, or (2) a New York tax on hospitals, *DeBuono*, 520 U.S. at 816—laws that do not require construction of contested plan

terms or constrain administrative choices, but that have a merely incidental economic effect on ERISA plans. (*See* Mem. in Supp. 16 (discussing *Travelers* and the related decision in *Hattem v. Schwarzenegger*, 449 F.3d 423, 429 (2d Cir. 2006), which held a California tax was not preempted because it had a merely "indirect economic effect on choices," but did not directly regulate any ERISA plan).)

*Travelers* and *DeBuono* discussed the outer limits of ERISA § 514(a)'s preemptive breadth, an issue not relevant here. For instance, both cases recognized that even a state tax would be preempted if it "produce[d] such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choices of insurers," *Travelers*, 514 U.S. at 668; *DeBuono*, 520 U.S. at 816 n.16 (quoting *Travelers*). This case, by contrast, relates not to ERISA § 514(a)'s outer edges but to its core. Section 514(a) preempts any state-law claim that either (1) seeks to control or supersede central ERISA functions, or (2) depends on the interpretation of documents that control how distributions are made under an ERISA plan.[4]

Plaintiff does not specifically dispute that these are proper and well-established bases for ERISA preemption. (*See* Mem. in Opp. 12-17 (arguing that plaintiff's claims do not fail on those grounds, but declining to contest the propriety of those grounds).) Thus, the only remaining question is whether plaintiff's claims are indeed preempted under those principles. TIAA's opening memorandum showed that this question must be answered in the affirmative, and plaintiff's opposition does nothing to change that answer.

---

[4]   Plaintiff suggests that TIAA's arguments somehow depend on the proposition that ERISA § 514(a) is limitless. (*See, e.g.*, Mem. in Opp. 2, 3-4, 5 n.4, 8, 12.) But plaintiff attacks a straw man. As TIAA made clear in its opening memorandum, plaintiff's state-law claims are preempted not because ERISA preempts virtually everything, but because his claims fall within the *core* of ERISA's preemptive scope.

4

## II.   PREEMPTION OF PLAINTIFF'S STATE-LAW CLAIMS IS PERFECTLY CONSISTENT WITH *GELLER* AND *GEROSA*

Plaintiff cites to *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996), *Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003), *Collins v. S.N.E.T.*, 617 F. Supp. 2d 67 (D. Conn. 2009), and other similar cases, and notes that common-law tort and contract actions have occasionally been upheld. (Mem. in Opp. 8-9.) But *none* of these cases departs from the rule that state-law claims will be preempted when they (1) seek to control or supersede core ERISA functions or (2) hinge on the interpretation of documents governing how distributions under an ERISA plan are to be made—that is, when the claims have an "impermissible connection with an ERISA plan." (Mem. in Supp. 10.)

In *Geller*, for instance, the Second Circuit held that a trust's fraud claim could go forward precisely because it *did not* seek to prohibit or otherwise regulate account management practices. 86 F.3d at 23 ("[T]he essence of the plaintiffs' fraud claim does not rely on the pension plan's operation or management."). Moreover, the alleged fraud did not turn on a disagreement over the meaning of documents controlling how distributions are made under an ERISA plan (as in the present case), but rather involved the employer's outright lies, which were wholly unrelated to plan terms.

In *Gerosa*, the Second Circuit held that state negligence and malpractice claims against "plan *advisors*, such as accountants, attorneys, and consultants, are not preempted," 329 F.3d at 324 (emphasis added), precisely because those individuals are *not* responsible for core ERISA functions, such as claim processing and calculation of benefits. And in *Collins*, the district court held that state-law claims were not preempted because they did not "force ERISA plans or actors to act in a certain manner in every context," and imposed no "administrative burdens" at all. 617 F. Supp. 2d at 81. Moreover, the contract claims were not based on documents that govern how

5

distributions were made under an ERISA plan—and the court expressly noted that they would likely be preempted if they had been. *Id.* at 80 n.17.[5]

### III. ERISA PREEMPTS PLAINTIFF'S STATE-LAW CLAIMS

#### A. Plaintiff's State-Law Claims Are Preempted Because They Purport To Supersede and Control Core ERISA Functions

Because the "basic thrust of the pre-emption clause [is] to avoid a multiplicity of regulation" of ERISA plans, *Travelers*, 514 U.S. at 657, state law is preempted if it attempts to "bind plan administrators to any particular choice," *id.* at 659, or "mandate[] employee benefit structures or their administration," *id.* at 658, thereby "function[ing] as a regulation of an ERISA plan itself," *id.* at 659, and undermining the ability of plan sponsors to structure ERISA benefit plans as they see fit. *Id.* As explained in TIAA's opening memorandum (Mem. in Supp. 10-14), that is precisely what plaintiff's state-law claims purport to do.

1. Plaintiff does not dispute that processing transfer and withdrawal requests, and calculating benefits owed, are classic core ERISA functions. He instead argues—without any citation to authority—that whatever the nature of his state-law claims, they are not preempted

---

[5] The remaining cases cited by plaintiff are equally irrelevant to the present dispute. *See, e.g., Skaggs v. Subway Real Estate Corp.*, No. 03-1412, 2006 WL 1042337, at *5 (D. Conn. Apr. 19, 2006) (state-law claim of interference with contractual and business relations not preempted by ERISA, because the claim was based on an alleged abuse of "corporate authority," and not on plan mismanagement); *Coldesina v. Estate of Simper*, 407 F.3d 1126, 1137 (10th Cir. 2005) (negligent supervision claims not preempted because "the plan's structure and administration are not being regulated"); *Penny/Ohlman/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 700 n.4 (6th Cir. 2005) (claim is not preempted because it "does not directly touch upon the operation of the plan itself"); *LeBlanc v. Cahill*, 153 F.3d 134, 148 (4th Cir. 1998) (state-law claims by trustees of an ERISA plan against third party who had made allegedly fraudulent and misleading statements were not preempted, because the claims did not "mandate employee benefit structures or their administration, bind employers or plan administrators to particular choices or preclude uniform administrative practice").

Indeed, some of the cases on which plaintiff purports to rely made no ERISA § 514(a) ruling at all. *See, e.g., Toumajian v. Frailey*, 135 F.3d 648, 653 n.3 (9th Cir. 1998) ("Fortunately, because our determination on the jurisdictional issue does not require us to determine whether [plaintiff's] claims fall within this 'relate to' preemption, we can avoid interpreting this provision"); *Denniston v. Taylor*, No. 98-3579, 2004 WL 226147, at *6 (S.D.N.Y. Feb. 4, 2004) ("[I]t is not necessary for the Court to reach the [preemption] issue because it is clear that the contract claim fails on its merits ....").

6

simply because TIAA "is not an ERISA plan administrator." (Mem. in Opp. 13.) This argument is meritless. What matters for preemption purposes is whether state-law claims seek to control or supersede a core ERISA *function*, which plaintiff's claims undoubtedly do. (Mem. in Supp. 10-14.) The fact that plaintiff's employer—the plan sponsor and administrator—has chosen to engage TIAA to provide those services for the plan does not control.

The Third Circuit's decision in *Kollman v. Hewitt Associates, Inc.*, 487 F.3d 139 (3d Cir. 2007), makes this clear. (*See* Mem. in Supp. 12-13.) The plaintiff in *Kollman* brought state-law claims, not against the plan administrator, but against an administrative service provider to the plan responsible for calculating retirement benefits. The Third Circuit nonetheless found those claims preempted, reasoning that they went "to the essence of the function of an ERISA plan— the calculation and payment of the benefit due to a plan participant." *Id.* at 150. As the Third Circuit recognized, ERISA preemption asks whether a state-law claim seeks to supersede or control a core ERISA *function*, and not whether the plan administrator has chosen to perform that function for itself.[6] *See also Pilot Life*, 481 U.S. at 48 (common law claims against insurance company that managed an employer's long term disability employee benefit plan, based on alleged improper claim processing, are "undoubtedly" preempted); *Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987) (same); *Gregory v. Met. Life Ins. Co.*, 648 F. Supp. 2d 591, 608-09 (D. Vt. 2009) (ERISA preempts state-law bad-faith claim against third-party claims processor).

2. Plaintiff suggests that *Gerosa* rejected uniformity as an important Congressional concern. (Mem. in Opp. 14-15.) But as the Supreme Court made clear in *Travelers*, uniformity

---

[6] Recognizing that his position cannot be squared with the decision in *Kollman*, plaintiff asks this Court to ignore it. (Mem. in Opp. 18.) He contends that the Third Circuit's ERISA preemption jurisprudence differs from the Second Circuit's simply because *Kollman* thought it unnecessary to cite legislative history on the purpose of ERISA plans generally, and because *Kollman* recognized that uniformity of plan administration is important (as the Supreme Court has repeatedly said). That contention lacks merit.

7

was Congress's *principal* reason for enacting ERISA § 514(a). 514 U.S. at 656-57; *see also Pilot Life*, 481 U.S. at 46. And uniformity in administration would be undermined by plaintiff's state-law claims: were plaintiff to prevail, ERISA plans could not process transfer requests and calculate benefits in the manner that the prospectuses provide.

While plaintiff asserts in conclusory fashion that his putative nationwide class action ensures TIAA would be "subject to the same requirements everywhere" (Mem. in Opp. 14 n.10), he ignores the fact that different states have different laws, and hence that Vermont law would not apply across the entire country. *Cf. Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988) (Delaware Consumer Fraud Act applies only to conduct occurring within the state).

3. Plaintiff asserts that he does not claim wrongful denial of benefits under an ERISA-regulated plan. (Mem. in Opp. 12 n.9.) This contention directly contradicts his complaint and is implausible on its face: he admits the plan is governed by ERISA, and his complaint is that TIAA should have calculated the value of his investments in a different manner in response to his transfer request. (*See* Compl. ¶¶ 6-14, 27-32.) In any event, such claim is foreclosed by such decisions as *Aetna Health*, 542 U.S. at 214, which held that a state-law claim seeking to rectify an allegedly wrongful denial of benefits under an ERISA plan was preempted. (Mem. in Supp. 11-12.) Plaintiff does not discuss *Aetna Health* despite its recency and TIAA's repeated citations to it. (Mem. in Supp. 8, 11 n.4, 14, 16.)

4. Plaintiff's final contention is that his state-law claims should be preserved because TIAA asserts that he has no ERISA claim. (Mem. in Opp. 15.) This suggestion is meritless. (*See* Mem. in Supp. 16 & n.5 (citing *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).) Because plaintiff's claims seek to prohibit core ERISA functions, they plainly have an

impermissible relation to his employer's ERISA plan. The fact that plaintiff's ERISA claim also is meritless does not somehow breathe life into his preempted state-law claims. (Mem. in Supp. 16-17.)

### B. Plaintiff's State-Law Claims Are Preempted Because They Depend on Contested Interpretations of Documents Controlling How ERISA Plan Distributions Are Made

Plaintiff's state-law claims are also preempted because their resolution would require interpretation of TIAA's prospectuses, which control how distributions are made under an ERISA plan. (Mem. in Supp. 14-15 (citing cases).)

In response, plaintiff asserts that his claims arise independently of TIAA's prospectuses because they "are based on state laws (common law and the Consumer Fraud Act) of general applicability." (Mem. in Opp. 16.) But this argument is a red herring. A state law is not immune from preemption simply because it is a law of general applicability; were it otherwise, Congress would have had no reason to explicitly exempt, for example, "generally applicable *criminal* law of a State" from ERISA § 514(a)'s scope. ERISA § 514(b)(4), 29 U.S.C. § 1144(b)(4) (emphasis added).

The question is not whether plaintiff relies on a state law of general application; it is whether the particular application that plaintiff advocates would have an impermissible relation to an ERISA plan. *See, e.g., Pilot Life*, 481 U.S. at 43, 48 (state common-law claims for "Tortious Breach of Contract" and "Breach of Fiduciary Duties" against insurer of ERISA plan "relate to" the plan); *Taylor*, 481 U.S. at 62 (state-law contract and tort claims alleging improper processing of claim "relate to" the plan). Plaintiff's state-law claims are preempted because they depend on contested—indeed, implausible—interpretations of the prospectuses that control how requests for distributions under an ERISA plan are processed and calculated.

### C. Plaintiff's Car Dealer and Broker Analogies Are Inapt

In an effort to portray his state-law counts as garden-variety common law claims that have only an incidental relation to an ERISA plan, plaintiff asserts that TIAA is akin to a car dealer who converts a car or a broker who intentionally delays the redemption of a check to capture the float. (Mem. in Opp. 1-2.) The analogies fail. Neither the hypothetical car dealer nor the broker is processing account requests for investments in *an ERISA plan*. Hence, unlike here, the court in those circumstances would not need to consider whether the conduct at issue had a sufficient relation to an ERISA plan to be preempted. Plaintiff's analogies are inapt for another reason: they suggest that TIAA is impermissibly using plaintiff's property for its own purposes. To the contrary, as of the effective date of a transfer request, a plan participant no longer owns any tangible property in TIAA's possession, and instead is entitled only to the value of his investments as of the effective date. (Mem. in Supp. 3-4.) Plaintiff does not claim he got anything less. (Compl. ¶ 7 (admitting that the check he received reflected the account's value as of the transfer's effective date).)

### CONCLUSION

Counts II and III of the Complaint should be dismissed with prejudice because they are preempted by ERISA.

Dated: January 19, 2010                    Respectfully submitted,

/s/ Elizabeth R. Wohl
Elizabeth R. Wohl
28 Vernon Street
P.O. Box 9
Brattleboro, VT 05302-0009
Phone: (802) 258-3070
Fax:    (802) 258-4875
Email: ewohl@drm.com

Counsel for Defendant Teachers Insurance and Annuity Association of America

10

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| NORMAN WALKER, on behalf of himself and all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA – COLLEGE RETIREMENT AND EQUITIES FUND, (TIAA-CREF),<br>    Defendant. | )<br>)<br>)<br>)<br>)   Docket No. 1:09-cv-190<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2010, I electronically filed Defendant Teachers Insurance and Annuity Association of America's Reply Memorandum in Support of its Motion to Dismiss Counts II and III of the Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Norman Williams, attorney for the plaintiff.

Brattleboro, Vermont
January 19, 2010

DOWNS RACHLIN MARTIN PLLC

By /s/ Elizabeth R. Wohl
Elizabeth R. Wohl
28 Vernon Street
P.O. Box 9
Brattleboro, VT 05302-0009
Telephone: (802) 258-3070
Facsimile: (802) 258-4875

ATTORNEYS FOR DEFENDANT
TEACHERS INSURANCE AND
ANNUITY ASSOCIATION OF
AMERICA

3407462.1


Downs
Rachlin
Martin PLLC