**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

NORMAN WALKER, on behalf of himself and all others similarly situated,

Plaintiff,

v.

TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA - COLLEGE RETIREMENT AND EQUITIES FUND (TIAA-CREF), COLLEGE RETIREMENT AND EQUITIES FUND, TIAA-CREF INVESTMENT MANAGEMENT, LLC, TEACHERS ADVISORS, INC., AND TIAA-CREF INDIVIDUAL AND INSTITUTIONAL SERVICES, LLC,

Defendants.

Docket No. 1:09-cv-190

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

TIAA-CREF's[1] summary judgment motion should be granted because Walker admits he received the value of his CREF accounts as of the admitted effective date of his transfer request. This is exactly what the plain terms of the CREF prospectuses and account certificates governing plan benefits entitled him to, which is all that ERISA requires here. Under these controlling documents, Walker was out of the market as of May 1, 2007 and had no cognizable interest in investment gains or losses after that date. Though that point alone is sufficient to resolve this motion, there also is no evidence that TIAA-CREF kept for its own benefit the amounts in the gain and loss accounts. Instead, those amounts are netted against other administrative expenses each quarter and applied to all investors. (*See* ECF No. 61-2 (TIAA-CREF's Statement of Undisputed Facts ("SOF")).)

In his opposition, Walker fails to come forward with evidence showing a genuine dispute of material fact. Walker admits four of TIAA-CREF's eight undisputed facts, including that he received the effective-date value to which he was entitled. (ECF No. 70 (Response to SOF) ¶¶ 1, 4-6.) As for the remaining four facts, he attempts to manufacture disputes by citing to filings from another case that do not apply to Walker or that, when scrutinized, otherwise do not rebut the facts that TIAA-CREF established. (*See id.* ¶¶ 2, 3, 7, and 8.)[2] He has nothing but speculation to support his assertion that TIAA-CREF owed him post-effective-date investment experience. The plan-related documents he submits do not help him. They include some materials that do not address the valuation-date issue at all. They include others that directly

---

1 Defendants refer to themselves in this memorandum collectively as "TIAA-CREF" for convenience only, without suggesting or conceding that they are not separate entities, and without suggesting or conceding that any of them is properly sued for the conduct alleged in the amended complaint.

2 In addition to admitting or purporting to dispute TIAA-CREF's facts, Walker asserts nine paragraphs of his own "Additional Facts." (Response to SOF ¶¶ 9-17.) These "facts" are immaterial to this motion, except that ¶ 14 duplicates, in part, TIAA-CREF's Undisputed Fact ¶ 2 by stating that TIAA-CREF is obligated to pay effective-date account values.

refer investors to the CREF prospectus and certificates that TIAA-CREF submitted showing that Walker is entitled only to the effective-date value of his CREF accounts. Confirming the absence of evidence that he is entitled to anything more than the effective-date value, Walker himself submitted a copy of a CREF certificate that TIAA-CREF submitted. Both documents show he is entitled only to the value of his accounts as of the effective date of his withdrawal request.

Walker also has nothing but speculation to support his assertion that TIAA-CREF benefited from plan assets in which he had an interest. The deposition testimony of Brian Bohaty from another case is consistent with his declaration here, and does not suggest that TIAA-CREF pays salaries or other expenses with the amounts in the gain and loss accounts.

Since Walker has failed to come forward with evidence creating a genuine dispute of material fact, TIAA-CREF is entitled to summary judgment.

## ARGUMENT

### I. TIAA-CREF IS ENTITLED TO SUMMARY JUDGMENT

#### A. Walker's ERISA claims fail because he admits he received exactly what TIAA-CREF was required to pay him under the St. Michael's College Plan.

TIAA-CREF demonstrated that the CREF prospectus and the pertinent SEC rule require CREF to calculate Walker's effective-date value based on the date that his transfer request was in good order – May 1, 2007. (ECF No. 61-1 (Mem. ISO Mot. for S.J.) ("Mem.") at 10-13.) Walker admits that this is exactly what he was paid. (ECF No. 70 (Response to SOF) ¶¶ 1, 4-6. (admitting four of TIAA-CREF's eight undisputed facts).) Walker's opposition does not create a genuine dispute of fact that ERISA entitled him to the investment experience he would have had if his effective date had been later than May 1, 2007.

1. **Walker is entitled only to the effective-date value of his CREF accounts.**

Recognizing that the CREF prospectus dooms his claims, Walker quibbles with whether it controls how his benefits under the St. Michael's College Plan are calculated. (ECF No. 71 (Mem. in Opp. to Mot. for S.J. ("Opp.")) at 13.) He asserts that, instead, four TIAA-CREF "plan documents" that he submits are controlling. (ECF Nos. 71-36, 71-37, and 71-38 (Walker Aff. Exs. 5, 6, and 7 (two separate documents)).) There are not, however, two competing sets of plan-related documents that dictate different results. The documents Walker submitted are all perfectly consistent with – and in one case, duplicate – the CREF prospectus and certificates that TIAA-CREF submitted, which show that Walker is entitled only to the effective-date value of his accounts. (ECF No. 61-4 (Bohaty Decl. Ex. 1 (prospectus)), ECF Nos. 61-9, 61-10 (Slaton Decl. Exs. 1 and 2 (Walker's CREF certificates)).)

Walker first asserts that "[t]he only TIAA-CREF document which addresses payment at all is the 'Service Directory.'" (Opp. at 14 (citing Williams Aff. Ex. 7).) That is incorrect: the CREF prospectus and certificates that TIAA-CREF submitted ***are*** "TIAA-CREF documents"; they ***all*** address payment; and they ***all*** show that Walker is entitled only to the effective-date value, which is what he admits he received. (Bohaty Decl. Ex. 1 and Slaton Decl. Exs. 1 and 2.) In any event, the "Service Directory" that Walker submits (Williams Aff. Ex. 7) does not contradict that critical point. Walker cites only to a page titled "Options Available at Termination of Employment," which is not applicable since Walker's employment with St. Michael's College did not terminate. (Opp. at 14 citing Williams Aff. Ex. 7 at NW 92.) Rather, he transferred his accounts from TIAA-CREF to Milliman but stayed with the same employer. (First Amended Complaint ("FAC") ¶¶ 4, 12, 15.) And his quote from that inapposite page merely states that TIAA-CREF makes payment after it receives all required paperwork (Williams

Aff. Ex. 7 at NW 92); that provision is separate from what value he is entitled to be paid, and does not state or remotely suggest that he is entitled to post-effective-date investment experience.

Furthermore, the Service Directory refers the participant to the CREF documents submitted by TIAA-CREF that confirm that Walker is entitled only to his effective-date value. The Service Directory states that "in your packet you'll find your annuities," and that "we've issued contracts for both TIAA and CREF, even if you allocated premiums only to one annuity." (Williams Aff. Ex. 7 at NW 83.)[3] Those contracts are the two CREF certificates that TIAA-CREF submitted, which provide that Walker is entitled only to the effective-date value of his CREF accounts. (Slaton Decl. Ex. 1 at 15 and Ex. 2 at 15.) The Service Directory also refers participants to the CREF prospectus for further information about their investment accumulations. (Williams Decl. Ex. 7 at NW 85.) Of course, under the prospectus, just as under the certificates, Walker is entitled only to the effective-date value. (SOF ¶¶ 1-2.)

The other documents that Walker submitted also do not create a genuine dispute that Walker was entitled to post-effective-date investment experience. CREF's "Rules of the Fund" simply do not address the issue. (Williams Decl. Ex. 5.) Walker also cites to a TIAA certificate (Williams Aff. Ex. 6 at pp. 2-24 of pdf.) But that document is irrelevant because Walker admits he held only CREF accounts, not TIAA accounts. (Response to SOF ¶ 4.) Finally, the CREF certificate that takes up the remainder of plaintiff's Exhibit 6 is Walker's copy of one of the two certificates that TIAA-CREF submitted, which shows that Walker is entitled only to the effective-date value. (*Compare* Williams Aff. Ex. 6 at p. 45 of pdf (p. 15 of CREF certificate ("Transfers")) *with* Slaton Decl. Ex. 1 at p. 29 of pdf) (p. 15 of CREF certificate ("Transfers").)

[3] Walker's reference to his own testimony that he interpreted the Service Directory as somehow requiring the payment date to be the same as the effective date, (Opp. at 14 n.6), cannot create a genuine dispute of fact for the simple reason that the Service Directory does not address the issue, except by referring the participant to the certificates and prospectus that preclude Walker's claims. (Walker Aff. Ex. 7 at NW 83 (referring to certificates), NW 85 (referring to prospectus).)


In sum, the plan-related documents that Walker submitted either do not contradict TIAA-CREF's record, or are additional copies of documents that TIAA-CREF submitted that show that Walker is entitled only to the effective-value date.[4]

2. **Walker's allegation that CREF did not follow its prospectus for investors *other than* Walker is irrelevant.**

Recognizing that TIAA-CREF followed the CREF prospectus in calculating and paying Walker's account values, Walker also asserts that would-be intervenor Christine Bauer-Ramazani, and plaintiffs in another case, were not paid within the seven days set forth in the prospectus. (Opp. at 15-16.) But such allegations are irrelevant to and hence cannot defeat summary judgment as to ***Walker's*** claims, which are the only claims at issue in this motion. In any event, the particular number of days after the effective date that he was paid is irrelevant to Walker's claims, even as he has described them. (Opp. at 15 n.8.) That number of days also is irrelevant to Bauer-Ramazani's claims, even as she has described them. (ECF No. 68-1 at 2.)

3. **Walker's effort to dispute TIAA-CREF's Undisputed Facts 2 and 3 is unavailing because the *Rink* class certification order is irrelevant.**

TIAA-CREF demonstrated that the prospectus entitles a shareholder withdrawing his account only to the effective-date value. (SOF ¶ 2.) TIAA-CREF also demonstrated that under the prospectus, CREF has up to seven days after the effective date of a transfer or withdrawal request to make payment. (SOF ¶ 3.) Walker does not and cannot dispute that the prospectus contains both of these provisions. Nor does he point to any document requiring TIAA-CREF to pay something other than the effective-date value, or requiring TIAA-CREF to pay in fewer than seven days. Hence, these facts are not genuinely disputed.

[4] Walker's argument that the CREF prospectus is misleading because it does not disclose that TIAA-CREF may "retain investment gains earned after it receives a transfer or redemption request," (Opp. at 14), is unavailing, because there is no evidence that TIAA-CREF retained for its own benefit any investment gains in which he had an interest.

Instead of disputing TIAA-CREF's facts, Walker points to a class certification order in the *Rink v. CREF* case that mentioned CREF's ***voluntary*** payment of delayed-payment interest to some shareholders ***outside*** the context of any prospectus. (Response to SOF ¶¶ 2-3; ECF No. 71-7 (Williams Aff. Ex. F) at 2.) Walker's reliance on that order is misplaced. Even taking the order at face value, a "voluntarily implemented" program to pay interest, which is how the order describes the program, ECF No. 71-7 (Williams Aff. Ex. F) at 2), is not required by the prospectus. The prospectus does not mention delayed-payment interest. And the *Rink* order does not mention the prospectus. In any event, Walker's complaint here is not that he failed to receive ***interest***; it is that he did not receive ***investment gains*** he would have enjoyed if his effective date had been later. (*See, e.g.*, ECF No. 63 (First Amended Complaint) ¶¶ 20, 22.)

**4. Walker has offered no evidence to support his assertion that TIAA-CREF violated ERISA by complying with the prospectus.**

Walker argues that an ERISA fiduciary must act in accordance with the documents governing the plan only to the extent those documents comply with ERISA. (Opp. at 16-19 (citing ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D)).) That unremarkable point of law does not help Walker, because he has not identified evidence that TIAA-CREF's compliance with the prospectus's account valuation method violated any fiduciary duty. That distinction makes his reliance on *In re: Polaroid ERISA Litigation*, 362 F. Supp. 2d 461 (S.D.N.Y 2005) misplaced. There, the court held on a motion to dismiss that compliance with the retirement plan's requirement to hold company stock did not insulate defendants from fiduciary-breach claims where plaintiff had made sufficient allegations that it was ***otherwise*** imprudent to hold that stock. *Id.* at 474. Here, Walker does not support with evidence his assertion that ERISA prohibits TIAA-CREF from complying with the prospectus. *See also Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1242 (2d Cir. 1989) (even if it might have been prudent to take

another course, ERISA fiduciaries were required to follow plan document unless doing so would itself violate fiduciary duty).

**B. ERISA does not of its own force entitle Walker to anything more than what the controlling documents provide.**

TIAA-CREF demonstrated that under the documents governing the plan, a participant is out of the market and is not entitled to any investment gains or losses as of the effective date of a transfer or withdrawal request. (SOF ¶¶ 1-3, 5-6; Bohaty Decl. ¶¶ 6-10; Mem. at 3-5.) Since as a matter of law there are no plan assets in which he has an interest other than the effective-date value of his accounts, Walker's claims for breach of fiduciary duty and for prohibited transactions fail.

Walker's response is that notwithstanding plan-related documents submitted by both sides, ERISA of its own force requires TIAA-CREF to give him post-May 1, 2007 investment experience. (*See*, *e.g.*, Opp. at 16-20.) Walker is mistaken. Where, as here, a plan participant receives what the plan requires, he has no claim on would-be investment experience so as to support a cause of action for breach of fiduciary duty or prohibited transactions under ERISA. In *Faber v. Metropolitan Life Insurance Co.*, for example, a life insurer provided plan beneficiaries with interest-bearing checking accounts as a way to access death benefits. No. 08 Civ. 10588 (HB), 2009 U.S. Dist. LEXIS 98775, at *4-6 (S.D.N.Y. Oct. 23, 2009). The beneficiaries sued because they claimed that ERISA entitled them not just to the interest that the plans promised, but also to the difference between that interest and the presumably greater investment returns MetLife earned on the principal. *Id.*, at *6.

The court dismissed the complaint, finding there was no breach of fiduciary duty or prohibited transaction by MetLife as a matter of law because plaintiffs received everything they were promised in plan documents – death benefits plus interest. *Faber*, 2009 U.S. Dist. LEXIS

98775, at *25. The court noted that ERISA "'does no more than protect the benefits which are due an employee under a plan,'" and does not "'create an exclusive duty to maximize pecuniary benefits.'" *Id.*, at *25-26 (citations omitted). Hence, "[w]here a fiduciary complies with a plan's lawful terms and provides the beneficiaries the benefits they were due under the plan, there is no violation of [ERISA's] exclusive purpose requirement." *Id.*, at *26. *See also Morse v. Stanley*, 732 F.2d 1139, 1145-46 (2d Cir. 1984) (rejecting ERISA loyalty claim based on trustees' failure to accelerate benefits where the plan did not require acceleration prior to retirement); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (finding no violation of ERISA's exclusive purpose requirement "[b]ecause Defendants complied with the Plan's lawful terms and were under no legal obligation to deviate from those terms, [and defendant] provided Plaintiffs with their benefits due.").

Walker's authorities are not to the contrary. (Opp. at 20 (citing *Mogel v. Unum Life Ins. Co. of Am.*, 547 F.3d 23 (1st Cir. 2008).) [5] In *Mogel*, plan beneficiaries alleged that an insurer breached fiduciary duties and engaged in prohibited transactions under ERISA by not paying them benefits in a lump sum, as the plan required, and instead by providing checkbooks that permitted the beneficiaries to write checks against benefit amounts that the insurer kept and invested for its own benefit until then. The court of appeals found that plaintiffs had stated a claim not because ERISA imposed some duty to maximize pecuniary benefits (which it does not), but because plaintiffs alleged they did not receive the lump-sum payments required by the plan. *See Faber*, 2009 U.S. Dist. LEXIS 98775, at *26 n.7 (distinguishing *Mogel* because plaintiffs there alleged they did not receive the benefits to which the plan entitled them).

[5] Though the point is irrelevant to this motion since Walker cannot support a prohibited transaction claim even on its face, Walker wrongly asserts that TIAA-CREF has not asserted any statutory exemptions to that claim, Opp. at 20 n.13. (*See* ECF No. 66 (Answer to FAC) at Affirmative Defense ¶ 7 (pleading ERISA § 408, 29 U.S.C. § 1108 exemption to ERISA § 406, 29 U.S.C. § 1106 claim).)

Here, like *Faber* and unlike *Mogel*, Walker admits that TIAA-CREF paid him the amount that the documents governing the St. Michael's College Plan required. Since the plan provided he would be out of the market as of May 1, 2007, there were no plan assets in which he had an interest after that date, and his ERISA claims fail as a matter of law. (*See also* Mem. at 14 (citing *McCabe v. Capital Mercury Apparel*, No. 09 Civ. 8617, 2010 WL 4507443, at *7 (S.D.N.Y. Nov. 9, 2010) (granting summary judgment to defendant on ERISA fiduciary duty claims because the plan "not only condoned, but explicitly required" defendants to use the valuation method that they did in calculating distributions to participants).))

**C. Walker's effort to dispute TIAA-CREF's Undisputed Facts 7 and 8 is unavailing because he has not offered evidence that TIAA-CREF used for its own benefit plan assets to which he was entitled.**

Since Walker did not have a cognizable interest under ERISA in plan assets after the effective date of his withdrawal request, his argument that TIAA-CREF invested for its own benefit plan assets in which he had an interest is unsupported. (Opp. at 20-24.)[6] Thus, he does not have an interest in the amounts in the gain and loss accounts generated when TIAA-CREF sells annuities to pay investors who are withdrawing or transferring their accounts. In any event, TIAA-CREF also showed that it does not keep for its own benefit amounts in those accounts. (SOF ¶¶ 7-8; Bohaty Decl. ¶¶ 8-10.) Plaintiff's effort to dispute this point depends entirely on misreading Bohaty's deposition testimony from *Rink*. (Response to SOF ¶¶ 7-8.) Walker asserts that Bohaty testified that TIAA-CREF pays employee salaries and other expenses out of plan assets in which plan participants such as Walker have an interest. (*Id.*) That assertion is incorrect.

---

[6] Walker's statement that TIAA-CREF "does not dispute that it used the plan assets of Plaintiff Walker" after receiving his transfer request (Opp. at 20) is simply incorrect, and plaintiff offers no support for this assertion.

Bohaty did not testify in *Rink* that TIAA-CREF kept any amounts in the gain and loss accounts for its own benefit. To be sure, he testified that the administrative fees charged to CREF variable annuity shareholders cover such expenses as salaries. (Catalano Reply Decl. Ex. 1 (Bohaty Dep.) at 81:16-82:5.) The fact and amount of those fees – not at issue in this case – are disclosed in the CREF prospectus. (Bohaty Decl. Ex. 1 at TIAA-WALKER 140-41 (administrative expenses cover "administration and operations") and 142 (disclosing amounts of administrative expenses for each CREF annuity).) But Bohaty did not testify that TIAA-CREF pays salaries out of the gain and loss accounts, as Walker insinuates. (Opp. at 24.) Rather, Bohaty testified that the amounts in the gain and loss accounts are netted with ***other*** administrative expenses such as salaries and technology costs, and adjusted each quarter and applied to all shareholders. (Catalano Reply Decl. Ex. 1 (Bohaty Dep.) at 71:6-72:10, 73:25-76:15, 75:23-76:15.) Nothing in Bohaty's testimony suggests that these gain and loss accounts somehow increase or decrease TIAA-CREF's independent obligations to pay salaries or other expenses, such that TIAA-CREF could reduce these obligations by deliberately delaying or accelerating when it paid shareholders.

Thus, even if Walker could overcome the hurdle of showing that the amounts in the gain and loss accounts are plan assets in which he has an interest (and he cannot do so as a matter of law), he has not created a genuine dispute of fact that TIAA-CREF keeps the amounts in those accounts for its own benefit.

## CONCLUSION

The Court should enter summary judgment for TIAA-CREF because it gave Walker exactly what it promised him, and never used for its own benefit plan assets in which he had a cognizable interest.

Dated: March 18, 2011

O'MELVENY & MYERS LLP

By: /s/ Christopher D. Catalano
Robert N. Eccles (*pro hac vice*)
Christopher D. Catalano (*pro hac vice*)
1625 Eye Street, N.W.
Washington, D.C. 20006
Phone: (202) 383-5300
Fax: (202) 383-5414
Email: beccles@omm.com
ccatalano@omm.com

Robert Luce
Elizabeth R. Wohl
Downs Rachlin Martin PLLC
28 Vernon Street, P.O. Box 9
Brattleboro, VT 05302-0009
Phone: (802) 258-3070
Fax: (802) 258-4875
Email: ewohl@drm.com

Counsel for Defendants Teachers Insurance and Annuity Association of America (identified in the complaint as "Teachers Insurance and Annuity Association of America - College Retirement Equities Fund (TIAA-CREF)"), College Retirement Equities Fund (identified in the complaint as "College Retirement and Equities Fund"), TIAA-CREF Investment Management, LLC, Teachers Advisors, Inc., and TIAA-CREF Individual and Institutional Services, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2011, I electronically filed the Reply Memorandum in Support of Defendants' Motion for Summary Judgment, and the supporting Reply Declaration of Christopher D. Catalano, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following: Norman Williams, attorney for the plaintiff.

/s/ Christopher D. Catalano
Christopher D. Catalano

DC1:822487.4