UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

CHRISTINE BAUER-RAMAZANI            :
and CAROLYN B. DUFFY, on behalf     :
of themselves and all others similarly situated, :
                                    :
    Plaintiffs,                     :
                                    :
        v.                          :      No. 1:09-CV-190
                                    :
TEACHERS INSURANCE AND ANNUITY      :
ASSOCIATION OF AMERICA-COLLEGE      :
RETIREMENT AND EQUITIES FUND,       :
COLLEGE RETIREMENT AND EQUITIES     :
FUND, TIAA-CREF INVESTMENT          :
MANAGEMENT, LLC, TEACHERS           :
ADVISORS, INC., TIAA-CREF           :
INDIVIDUAL & INSTITUTIONAL          :
SERVICES, LLC, and TEACHERS'        :
INSURANCE AND ANNUITY               :
ASSOCIATION OF AMERICA,             :
                                    :
    Defendants.                     :
_____ :

MEMORANDUM AND ORDER
(Doc. 204)

I.  Introduction

Plaintiffs Christine Bauer-Ramazani and Carolyn Duffy (collectively, "Plaintiffs") move for class certification under Federal Rule of Civil Procedure 23. (Doc. 204.) Defendants Teachers Insurance and Annuity Association of America-College Retirement and Equities Fund, College Retirement and Equities Fund, TIAA-CREF Individual & Institutional Services, LLC, TIAA-CREF Investment Management, LLC, Teachers Advisors, Inc., and Teachers' Insurance and Annuity Association of America (collectively, "Defendants" or "TIAA-CREF") oppose the motion. (Doc. 213.) Plaintiffs filed a reply in support of their motion, including a voluminous

statement of facts. (Docs. 224, 224-2, 224-3.) The inclusion of the statement of facts spawned a motion to strike by Defendants (Doc. 231) which the Court denied, instead allowing Defendants to address these facts in a sur-reply, Dkt. Entry No. 255 (text only order). Defendants' sur-reply was filed, and the motion for class certification fully briefed, on March 29, 2013. The Court held a hearing on April 24, 2013, at which the Court heard argument on the class certification motion, among other pending motions. See Dkt. Entry No. 294 (minute entry).

Plaintiffs assert, in a five page motion,[1] they meet the requirements of Rule 23(a) and 23(b)(1) and (b)(3). (Doc. 204.) Their proposed class definition is:

> All persons, including all 'persons' as defined by 29 U.S.C. § 1002(9), requesting a transfer or distribution of mutual fund or money market accounts covered by ERISA whose accounts TIAA-CREF invested, kept invested, benefitted from, or otherwise used for purposes other than the benefit of the account holder, for a period of time other than that permitted by the fund prospectus.

(Doc. 205 ¶ 30.)

Defendants argue generally Plaintiffs have not met their burden of affirmatively demonstrating the requirements for class certification and have offered a flawed class definition. (Doc. 213.) Specifically, Defendants challenge Plaintiffs' showing on every requirement except numerosity.

---

[1] Plaintiffs also cite to class certification papers filed over two years ago as further support for their current motion. See Doc. 204 at 5 (citing Docs. 55, 67). As many courts have noted, "Wal-Mart's interpretation of Rule 23(a)(2) has changed the landscape" of class certification. D.L. v. District of Columbia, Nos. 11-7153, 12-7042, 2013 WL 1489471, at *5 (D.C. Cir. Apr. 12, 2013) (citing cases). Further, neither current plaintiff was involved in this litigation at the time those prior certification papers were filed. Accordingly, the Court declines to consider them in resolving the current class certification motion.

II.     Background[2]

This case was originally filed by Norman Walker in August 2009. (Doc. 1.) He alleged Teachers Insurance and Annuity Association of America-College Retirement and Equities Fund wrongfully "kep[t] customer accounts open for days or weeks after receiving instructions to close them, and retain[ed] all investment income earned in the interim for itself." (Doc. 1 at 1.) In September 2011, Mr. Walker was denied class certification and Defendants were granted summary judgment. See Dkt. Entry No. 108; Doc. 186. Walker's ERISA claims were dismissed because Defendants demonstrated he received what the prospectus governing his accounts required: payment within seven days from the business day chosen for his transfer to take effect. (Doc. 186 at 3 (citing Doc. 61-4 at 51, 62).)

The current Plaintiffs and proposed class representatives, Christine Bauer-Ramazani and Carolyn Duffy, have since been granted intervention. See Doc. 101; Dkt. Entry No. 202. The Consolidated Fourth Amended Complaint, the current complaint in this proposed class action, alleges Defendants engaged in prohibited transactions and wrongfully used customer funds in violation of their fiduciary duties of loyalty and impartiality by keeping the funds invested for purposes other than the customers' benefit after a transfer or redemption request and subsequently compensating some, but not all, customers for delayed payment. (Doc. 205.) There are three separate ERISA counts in the complaint: (1) breach of fiduciary duty of loyalty; (2) breach of fiduciary duty of impartiality; and (3) prohibited transactions. Id. ¶¶ 1, 41-55.

---

[2] Unless otherwise cited, the background is based on Plaintiffs' Consolidated Fourth Amended Complaint.

Plaintiffs seek, on behalf of the proposed class, compensatory damages and equitable relief, including disgorgement, under ERISA section 502(a), and attorney's fees. Id. at 13-14.

Both Bauer-Ramazani and Duffy are St. Michael's College (St. Michael's) professors and were account owners of TIAA-CREF retirement accounts until 2007, during the time the St. Michael's retirement plan placed retirement assets of plan participants with TIAA-CREF. In 2006, St. Michael's, as administrator of the plan, directed TIAA-CREF to transfer plan participants' retirement accounts to another mutual fund platform, Milliman USA. TIAA-CREF refused, claiming the College had no authority to direct it to transfer the accounts because they were subject to individual contracts between TIAA-CREF and the participants. The plan obtained and forwarded to TIAA-CREF the individual signatures of over 750 College employees to authorize the transfer. The accounts were to be valued as of May 1, 2007. The prospectus states transfers "are effective at the end of the business day we receive your request and all required documentation," or a client could "choose to have [a] transfer[] . . . take effect at the end of any future business day." (Doc. 61-4 at 51.)

Defendants received Duffy's transfer authorization prior to May 1. (Doc. 204 at 2 n.1.) Duffy's account was transferred on May 9, 2007, and the check represented the value of her account as of May 1, though the account value had increased by more than $1,000.00 in the interim. She alleges the funds in her account remained invested between May 1 and May 9. TIAA-CREF states it paid Duffy "delayed payment interest" in connection with the transfer of her account to Milliman. (Doc. 213-2 at 2-3.)

Defendants received Bauer-Ramazani's transfer authorization on May 17. (Doc. 204 at 2.) Bauer-Ramazani's account was transferred on May 21, 2007, and the check represented

4

the value of her account as of May 1 though the account value had increased "by thousands of dollars" in the interim. (Doc. 205 ¶ 22.) She alleges the funds in her account remained invested between May 1 and May 21. TIAA-CREF paid Plaintiff Bauer-Ramazani "delayed payment interest" to "provide compensation for the delays [she] experienced." (Doc. 138-3 at 2.)

Plaintiffs claim "TIAA-CREF must disgorge the investment gains generated by [their] funds after [they] requested them back, or pay other compensation for the use of such funds." (Doc. 204 at 3.)

III. <u>Legal Standard for Class Certification and Analysis</u>

It is well-settled that class action lawsuits are suitable for vindicating statutory rights. <u>In re Amer. Exp. Merchants' Litig.</u>, 667 F.3d 204, 214 (2d Cir. 2012). "'[T]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." <u>Id.</u> (quoting <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 617 (1997)). Class actions are governed by Federal Rule of Civil Procedure Rule 23.

Rule 23(a), "Prerequisites," provides, in relevant part:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If Plaintiffs satisfy the requirements of Rule 23(a), they must also establish that their proposed class action is one of the three types of class action suits identified in Rule

23(b). A proposed class action containing claims for individualized monetary damages, as Plaintiffs seek here, see Doc. 204 at 3 ("TIAA-CREF must disgorge the investment gains generated by her funds after she requested them back"), must be analyzed under Rule 23(b)(3).[3] Nationwide Life Ins. Co. v. Haddock, 460 F. App'x 26, (2d Cir. 2012); Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2558 (2011). Under Rule 23(c)(2), classes certified under Rule 23(b)(3) are entitled to notice to the class members and the opportunity to opt-out. The Supreme Court has held: "Given that structure, we think it clear that individualized monetary claims belong in Rule 23(b)(3)." Wal-Mart, 131 S. Ct. at 2558.

Rule 23(b), "Types of Class Actions," provides:

> A class action may be maintained if Rule 23(a) is satisfied and if . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

A district court must conduct a "rigorous" class certification analysis, which may "entail some overlap with the merits of the plaintiff's underlying claim." Wal-Mart, 131 S. Ct. at 2551 (citations omitted). Recently, the Supreme Court cautioned: "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the

---

[3] Plaintiffs assert the "equitable relief of disgorgement" they seek "is entirely consistent with certification under [Rule] 23(b)(1)" and "[m]any courts have certified ERISA classes seeking similar equitable relief, including monetary 'make good' relief." (Doc. 224 at 8.) The two cases they cite in support of this statement, however, predate the Supreme Court decision in Wal-Mart. Id. n.8.

6

Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1194-95 (2013).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule–that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart, 131 S. Ct. at 2551. The Second Circuit has held, in conducting the "rigorous analysis," a "district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied by a preponderance of the evidence that each Rule 23 requirement has been met." In re Initial Pub. Offerings Secs. Litig., 471 F.3d 24, 41 (2d Cir. 2006). See also Levitt v. J.P. Morgan Sec., Inc., 710 F.3d 454, 465 (2d Cir. 2013) ("'The Rule 23 requirements must be established by at least a preponderance of the evidence.'" (quoting Brown v. Kelly, 609 F.3d 467, 476 (2d Cir. 2010)). Accordingly, the Court examines each Rule 23 requirement to determine whether Plaintiffs have sustained their burden of proof.

    A.    Rule 23(a) Prerequisites

        1.    Numerosity

No rigid test applies to determine whether the numerosity requirement has been met, but joinder is "generally presumed to be impracticable when a putative class exceeds 40 members." Marisol A. v. Guiliani, 126 F.3d 372, 376 (2d Cir. 1997). Here, Defendants do not argue Plaintiffs fail to meet the numerosity requirement and Plaintiffs allege the class is more than 20,000 strong, making joinder impracticable. (Doc. 205 ¶¶ 32-33.) With regard to the St. Michael's plan only, an exhibit filed earlier in the case listing St. Michael's plan participant account transfers shows over 100 participants whose accounts were transferred more than seven

days after May 1, 2007. See Doc. 71-35 at 10-13. Accordingly, the Court finds joinder of the class members would be impracticable and the numerosity requirement is satisfied.

2. Commonality

In Wal-Mart, the Supreme Court instructed the plaintiffs' "claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S. Ct. at 2551. "This does not mean merely that [class members] have all suffered a violation of the same provision of law" because the same provision of law "can be violated in many different ways." Id. "What matters to class certification is not the raising of common questions, . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. (internal quotation marks and citations omitted). "[F]or purposes of Rule 23(a)(2), even a single common question will do," id. at 2556 (internal quotation marks, brackets and citation omitted), so long as its determination "will resolve an issue that is central to the validity of each one of the claims in one stroke," id. at 2551.

The Wal-Mart plaintiffs sought to certify a class of approximately 1.5 million female employees of the retail giant alleging "the discretion exercised by [] local supervisors over pay and promotion violates Title VII by discriminating against women." 131 S. Ct. at 2547. The Supreme Court found the plaintiffs had failed to satisfy the commonality requirement because the putative class members were subjected to a wide array of different employment practices and plaintiffs failed to identify a "specific employment practice" tying all the claims together. Id. at 2555.

Judge Posner applied the Wal-Mart decision in deciding to reverse a lower court and grant certification to a class alleging claims of racial discrimination. McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 488 (7th Cir. 2012). The appellate court noted Merrill Lynch had company-wide practices as opposed to the different practices chosen by local managers at issue in Wal-Mart. Accordingly, where economic harm alleged by each class member is the result of the same corporate-wide policies, a putative class is appropriate post-Wal-Mart because if the policies are held unlawful, then a question central to the validity of each class member's claim would be resolved in "one stroke."

Here, the case does not involve purported employment discrimination as in both Wal-Mart and Merrill Lynch. While the Plaintiffs allege a sort of disparate treatment claim based on TIAA-CREF's breach of the fiduciary duties of loyalty and impartiality, they challenge the application of a company-wide policy of retaining gains in plan members' accounts when the accounts were not transferred within the required seven-day period and seek the same relief under all claims. Whether this policy is held lawful or unlawful, a question central to the validity of each member's claim would be resolved. That single common question generating a common answer is enough under Wal-Mart for purposes of Rule 23(a)(2). Accordingly, the Court finds the commonality requirement is satisfied.

3. Typicality

Typicality is satisfied when class members' claims arise from the same course of events and reflect the same legal theories. See In re Flag Telecom Holdings, Ltd. Secs. Litig., 574 F.3d 29, 35 (2d Cir. 2009). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality

requirements is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, the fact patterns of Plaintiffs Duffy and Bauer-Ramazani are different. Under the prospectuses, the "effective date" of a transfer or distribution is the date all required transfer paperwork is received or a designated future business day after receipt of transfer paperwork. See, e.g., Doc. 61-4 at 51 (College Retirement Equities Fund Individual, Group and Tax-Deferred Variable Annuities Prospectus). TIAA-CREF then has seven days to complete the transfer.[4] Id. at 62. Plaintiff Duffy's account transfer on May 9 was not completed within the allowed period of time from her May 1 effective date, triggered by the chosen future business day. Plaintiff Bauer-Ramazani's account transfer was completed within the allowed period of time from her May 17 effective date, triggered by receipt of her paperwork, but the amount of money transferred was the May 1 value of her account instead of the May 17 value.

Plaintiffs' proposed class definition focuses on persons whose accounts were held "for a period other than that permitted by the fund prospectus." (Doc. 204 at 1.) Plaintiffs assert Bauer-Ramazani is typical of other class members because Defendants "improperly chose" an effective date earlier than the date it received her request and thereby "captured the investment gains" earned on her funds "for a period not permitted by the prospectus, just as with other class members." (Doc. 224 at 10.)

Plaintiffs allege a greater than seven-day delay affected both Duffy and Bauer-Ramazani and Defendants' practice of retaining gains in plan members' accounts when the accounts were

---

[4] The Court is not aware of any fund prospectus containing a different time period for transfer than seven days.

not transferred within seven days is unlawful. This is the same practice alleged to have affected the class sought to be represented. The Court inquired of the parties at the class certification hearing whether Plaintiff Bauer-Ramazani represents a sufficiently numerous set of plaintiffs with inaccurate effective dates to create a sub-class. Counsel for Defendants stated there is not a way to determine from the computer data which accounts had inaccurate effective dates. The Court notes it is TIAA-CREF that enters the effective date to use as the date of valuation of an account to be transferred or distributed. Defendants will not be permitted to use their mistaken calculation of Plaintiff Bauer-Ramazani's effective date to defeat class certification. At this point, the Court concludes a class encompassing both Plaintiffs Duffy and Bauer-Ramazani is appropriate. Accordingly, the Court finds the typicality requirement is met despite the variation in the fact patterns of Plaintiffs Duffy and Bauer-Ramazani.

        4.     <u>Adequacy</u>

The focus of the inquiry regarding adequacy is "on uncovering conflicts of interest between named parties and the class they seek to represent." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 625 (1997). The Court must determine whether Plaintiffs' interests are antagonistic to the interest of other class members and if Plaintiffs' attorneys are qualified, experienced and able to conduct the litigation. <u>In re Flag Telecom Holdings, Ltd. Secs. Litig.</u>, 574 F.3d at 35 (citation omitted). If there is a conflict among class members, it must be "fundamental" to defeat class certification. <u>Id.</u> (citation omitted). The Second Circuit has noted that "ordinarily, if a court discerns a conflict the proper solution is to create subclasses of persons whose interests are in accord." <u>Boucher v. Syracuse Univ.</u>, 164 F.3d 113, 118-19 (2d Cir. 1999) (internal quotation marks and citation omitted).

As discussed, the fact patterns of Plaintiffs Duffy and Bauer-Ramazani differ. The Court however, does not regard the difference as fundamental or antagonistic to the interests of each other or the class. Unlike the potential class representatives and members in Boucher, who included women seeking varsity lacrosse and softball where the establishment of one could potentially exclude the other, 164 F.3d at 117, 119, Plaintiffs Duffy and Bauer-Ramazani and the class they seek to represent ask for one type of relief. Further, as TIAA-CREF ultimately controls the effective date used to value an account transfer or distribution, and those accounts with inaccurate effective dates cannot be culled from the larger group of delayed transfers, the Court finds certifying sub-classes is not the proper solution. The general interests of the proposed class are in accord. The Court finds Plaintiffs Duffy and Bauer-Ramazani are adequate class representatives. The adequacy of Plaintiffs' attorneys is discussed in Section IV.

B.   Rule 23(b) Requirements

As discussed above, Federal Rule of Civil Procedure 23(b)(3) applies because the proposed class action contains claims for individualized monetary damages. Each proposed class member's potential recovery would depend on the value of his or her account on certain dates. Rule 23(b)(3) requires the court find "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The requirement's purpose is to ensure that a "class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about

other undesirable results." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and citation omitted).

          1.      Predominance

Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" Myers, 624 F.3d at 547 (quoting Amchem Prods., 521 U.S. at 623). "Clearly, if proof of the essential elements of the cause of action requires individual treatment, then there cannot be a predominance of questions of law and fact common to the members of the class." Bd. of Trustees of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp., 287 F.R.D. 216, 221-22 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). With regard to a defense, however, though one "may arise and may affect different class members differently, this does not compel a finding that individual issues predominate over common ones." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (internal quotation marks and citation omitted). At base, "[p]redominance is a question of efficiency[:] Is it more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials?" Butler v. Sears, Roebuck & Co., 702 F.3d 359, 362 (7th Cir. 2013) (reversing denial of class certification).

To succeed on their claims, Plaintiffs will have to establish, at minimum: (1) Defendants were ERISA fiduciaries who (2) were acting within their capacity as a fiduciary, and (3) breached their fiduciary duty. In re Morgan Stanley ERISA Litig., 696 F. Supp. 2d 345, 353 (S.D.N.Y. 2009). Plaintiffs assert there are two common issues: (1) whether Defendants must disgorge investment gains earned on customer funds held for a period other than the prospectus allows;

and (2) whether, having paid such gains to non-ERISA customers, it must do so for ERISA customers as well. (Doc. 224 at 9.) Plaintiffs claim these issues predominate as they are the "only issues involved." Id.

Defendants point to their Rule 23(a)(2) commonality argument as proof that Plaintiffs cannot establish the requisite common issues under Rule 23(b)(3). (Doc. 213 at 15; Doc. 275 at 9.) They assert "individualized questions such as the reason for each class member's payment delay, and whether each class member could be entitled to 'lost investment experience,' swamp any purportedly common issues." Id.

While Plaintiffs miss the mark because there are certainly more than two issues, including the threshold issue of whether Defendants are ERISA fiduciaries, Defendants also fail to point to individualized issues sufficient to defeat the predominance of the issues amenable to generalized proof. See UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010) ("Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." (internal quotation marks and citation omitted)). The reason for a delay in payment is irrelevant to whether the delay itself was a breach of ERISA fiduciary duty. And whether an individual class member is entitled to "lost investment experience" (the increase, if any, in account value during the delay) is a calculation to be performed once the class has proved their claim and established it is entitled to such disgorgement. Whether Defendants qualify as ERISA fiduciaries, and whether a delay in transferring ERISA accounts or keeping gains, when

14

generated, on those accounts during the period of delay is a breach of that fiduciary duty are legal questions susceptible to classwide resolution.

While Defendants may have a unique defense against Plaintiff Bauer-Ramazani's delayed transfer claim as her transfer was effectuated within seven days of their receipt of her transfer paperwork, and any other similarly situated class members, that fact "does not render certification inappropriate in light of the common central issues" in the action. Brown, 609 F.3d at 484. The Second Circuit has noted, "where plaintiffs were allegedly aggrieved by a single policy of the defendants, and there is strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited." Id. (internal quotation marks and citation omitted). Rule 23(b)(3) requires that common issues predominate, "not that the action include only common questions." Id. A class action is the more efficient procedure for determining liability in this case. Accordingly, the Court, in its discretion, finds the predominance requirement of Rule 23(b)(3) is satisfied.

2. Superiority

Rule 23(b)(3)'s superiority requirement requires the court also find a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requirement mandates the court consider a number of pragmatic concerns to determine whether this lawsuit proceeds as a class action, including:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The predominance and superiority requirements together ensure a "class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007) (quoting Amchem, 521 U.S. at 615). Defendants have not separately challenged Plaintiffs' assertion the superiority requirement is satisfied. See Doc. 224 at 9.

There is no evidence any putative class member would prefer to pursue a separate lawsuit against Defendants. Plaintiffs assert this is the only action challenging Defendants' conduct under ERISA. (Doc. 224 at 9.) While this case has proved difficult to manage thus far, a class action may be the most fair, efficient and effective vehicle for the presentation of the parties' claims and defenses where the class is currently estimated to be very large (over 20,000 members) and the estimated average purported damages are low, making individual lawsuits cost-prohibitive. The Court finds a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

Accordingly, as the Court has found each Rule 23(a) prerequisite and the Rule 23(b)(3) requirements satisfied by a preponderance of the evidence, the Court holds class certification is appropriate.

IV.     Class Definition and Class Counsel

Rule 23(c)(1)(B) requires the Court define the class and the class claims, issues or defenses. Fed. R. Civ. P. 23(c)(1)(B). "District judges have broad discretion over class

definition," and, under Rule 23(c)(1), are "required to reassess their class rulings as the case develops." Boucher, 164 F.3d at 118 (internal quotation marks and citation omitted). A class definition must be precise, objective, and presently ascertainable. Manual For Complex Litigation (Fourth) § 21.222 (2004).

Plaintiffs propose the following class definition:

> All persons, including all 'persons' as defined by 29 U.S.C. § 1002(9), requesting a transfer or distribution of mutual fund or money market accounts covered by ERISA whose accounts TIAA-CREF invested, kept invested, benefitted from, or otherwise used for purposes other than the benefit of the account holder, for a period of time other than that permitted by the fund prospectus.

(Doc. 205 ¶ 30.) They argue the class is defined by three objective criteria: (1) whether the account is covered by ERISA; (2) whether TIAA-CREF transferred or distributed the account in accordance with its prospectus; and, (3) if not, whether the account experienced investment gains after the Effective Date. (Doc. 224 at 2.)

As a threshold matter, Plaintiffs' proposed class definition is not limited to those accounts experiencing an investment gain during the delayed transfer and does not refer to the "Effective Date." While the proposed class definition is not limited to accounts experiencing a gain, Plaintiffs are correct that it should be. The class definition "should exclude members who have not suffered damages as a result of the Defendants' conduct." Copp v. Am. Enter. Servs. Co., No. 4:11-CV-189, 2012 WL 1555097, at *2 (S.D. Iowa Apr. 24, 2012). As the Plaintiffs seek disgorgement of lost investment experience for each member of the class, it is not appropriate to include as class members persons whose accounts did not experience a gain during the delay. If the account value went down, there is nothing to disgorge.

17

The proposed class definition references "a period of time other than that permitted by the fund prospectus." Neither party has informed the Court of any relevant fund prospectus containing a time period for transfer other than seven days. Defendants correctly point out the Court has not determined a transfer or distribution after the prospectus period of seven days is an ERISA violation. (Doc. 213 at 6.) The Court has, however, determined that a person with an account transferred or distributed within the seven-day period does not have a claim. See Doc. 186. Those persons whose accounts were transferred or distributed outside of seven days share the common question of whether the delayed transfer or distribution is a violation and are appropriately grouped in a class.

Defendants also challenge the proposed class as overbroad because it does not exclude participants who requested a transfer from one TIAA-CREF fund to another TIAA-CREF fund. They argue "[a]ny class must exclude those investors because they already are obtaining the investment experience of the TIAA-CREF fund to which they are transferring as of the effective date of the transfer request." (Doc. 213 at 6.) If that is the case, there is no delay of more than seven days from the date the transfer was valued to the date the transfer was completed. Such participants would not be members of the class.

The Court does not adopt Plaintiffs' proposed language because it is overbroad and imprecise. The Court certifies the following class:

> All persons, including all 'persons' as defined by 29 U.S.C. § 1002(9), who at any time during the Class Period requested a transfer or distribution of TIAA-CREF mutual fund or money market accounts covered by ERISA whose accounts were not transferred or distributed within seven days of the date the account was valued and were denied the investment gains.

18

The Class Period is, as alleged by Plaintiffs, August 17, 2003 to the date of this certification ruling. (Doc. 205 ¶ 31.) An end date for the class period is necessary so the class members can be "presently ascertained." See Manual For Complex Litigation (Fourth) § 21.222. They must be identified and provided notice. The Court notes Defendants have raised a statute of limitations issue and has therefore included the term Class Period in the class definition in the event the time period covered by the action changes. Defendants have the burden of proving the statute of limitations as it is an affirmative defense. Should Defendants show that the action is limited, the Court may narrow the class. See Fed. R. Civ. P. 23(c)(1)(C). Accordingly, for purposes of this class certification ruling, the Class Period is August 17, 2003 to the date of this certification ruling.

Rule 23(g) requires the Court, if it certifies a class, to also appoint class counsel. Fed. R. Civ. P. 23(g)(1). Plaintiffs assert they are represented by counsel who are "competent and experienced" in ERISA and class action litigation. (Doc. 204 at 4.) Attorneys Hemley and Williams have served as counsel for many class action defendants (Doc. 204-6 ¶¶ 4, 6), but it is not clear either has acted as class counsel. Attorney Hemley declares the firm of Kozyak, Tropin & Throckmorton, P.A. specializes in class action litigation and has agreed to serve as co-counsel. Id. ¶ 8. As Defendants do not contest Plaintiffs' attorneys' adequacy, the Court appoints the firms of Gravel & Shea and Kozyak, Tropin & Throckmorton Class Counsel.

V.  Conclusion

The Court finds by a preponderance of the evidence that each Rule 23 requirement has been met. Accordingly, Plaintiffs' motion for class certification (Doc. 204) is GRANTED in part and DENIED in part. The Court certifies the following class:

> All persons, including all 'persons' as defined by 29 U.S.C. § 1002(9), who at any time during the Class Period requested a transfer or distribution of TIAA-CREF mutual fund or money market accounts covered by ERISA whose accounts were not transferred or distributed within seven days of the date the account was valued and were denied the investment gains.

The Court appoints the firms of Gravel & Shea and Kozyak, Tropin & Throckmorton as Class Counsel. Class Counsel shall promptly submit a draft proposed certification notice for the Court's review, revision, if necessary, and approval, see Rule 23(c)(2)(B), along with a proposed plan for dissemination. The proposed notice shall include a form for exercising the right to opt-out. This certification is subject to alteration or amendment as allowed under the authority of Rule 23(c)(1)(C).

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 9th day of May, 2013.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge