UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

CHRISTINE BAUER-RAMAZANI          :
and CAROLYN B. DUFFY, on behalf   :
of themselves and all others similarly situated,   :
                                   :
    Plaintiffs,               :
                                   :
    v.                        :          Case No. 1:09-CV-190
                                   :
TEACHERS INSURANCE AND ANNUITY    :
ASSOCIATION OF AMERICA-COLLEGE    :
RETIREMENT AND EQUITIES FUND,     :
COLLEGE RETIREMENT AND EQUITIES   :
FUND, TIAA-CREF INVESTMENT        :
MANAGEMENT, LLC, TEACHERS         :
ADVISORS, INC., TIAA-CREF         :
INDIVIDUAL & INSTITUTIONAL        :
SERVICES, LLC, and TEACHERS'      :
INSURANCE AND ANNUITY             :
ASSOCIATION OF AMERICA,           :
                                   :
    Defendants.              :
_____  :

MEMORANDUM AND ORDER
(Docs. 341, 358)

I.    <u>Introduction</u>

    Defendants Teachers Insurance and Annuity Association of America-College Retirement

and Equities Fund, College Retirement and Equities Fund, TIAA-CREF Individual &

Institutional Services, LLC, TIAA-CREF Investment Management, LLC, Teachers Advisors,

Inc., and Teachers' Insurance and Annuity Association of America (collectively, "Defendants" or

"TIAA-CREF") move for summary judgment under Federal Rule of Civil Procedure 56(a)

(Doc. 341) and to strike plaintiffs' demand for a jury trial (Doc. 358).  Plaintiffs Christine Bauer-

Ramazani and Carolyn Duffy (collectively, "Plaintiffs") oppose the motions.  (Docs. 367, 372.)

In reply in support of their motion for summary judgment, Defendants request the Court hear oral

argument.  (Doc. 376.)  This request is denied.  See D. Vt. L.R. 7(a)(6).  For the following

reasons, Defendants' motion for summary judgment is granted in part and denied in part and

Defendants' motion to strike is granted.

II.      Background[1]

This case was originally filed by Norman Walker in August 2009.  (Doc. 1.)  He alleged

Teachers Insurance and Annuity Association of America-College Retirement and Equities Fund

wrongfully "kep[t] customer accounts open for days or weeks after receiving instructions to close

them, and retain[ed] all investment income earned in the interim for itself."  (Doc. 1 at 1.)  In

September 2011, Mr. Walker was denied class certification and Defendants were granted

summary judgment.  See Dkt. Entry No. 108 (Minute Entry Sept. 19, 2011); Doc. 186.  Walker's

Employee Retirement Income Security Act ("ERISA") claims were dismissed because

Defendants demonstrated he received what the prospectus governing his accounts required:

payment within seven days from the business day chosen for his transfer to take effect.  (Doc.

186 at 3 (citing Doc. 61-4 at 51, 62).)

In August 2011 and October 2012, respectively, the current Plaintiffs and class

representatives, Christine Bauer-Ramazani and Carolyn Duffy, were granted intervention.  See

---

[1] The facts summarized in this section are drawn from materials submitted by the parties in connection with the summary judgment motion and prior motions decided by the Court, and are undisputed unless otherwise noted.  Local Rule 56(b) requires a party opposing summary judgment to "provide a separate, concise statement of disputed material facts."  D. Vt. L.R. 56(b).  Plaintiffs did so but also filed a "Statement of Additional Material Facts."  (Doc. 366 at 38-50.)  This Court has repeatedly reminded litigants that the Local Rules do not provide an opportunity for a non-moving party to file a statement of facts at the summary judgment stage. See Rotman v. Progressive Ins. Co., 5:12-CV-67, 2013 WL 3293531, at *1-2 (D. Vt. June 28, 2013) (citing cases).

Doc. 101; Dkt. Entry No. 202 (Minute Entry Oct. 3, 2012).  They also assert ERISA claims

against Defendants.  (Doc. 205 ("Compl.").)  In May 2013, the Court certified a class defined as:

> All persons, including all 'persons' as defined by 29 U.S.C. § 1002(9),
> who at any time during the Class Period requested a transfer or distribution
> of funds held in a CREF or TIAA variable annuity account covered by ERISA whose
> funds were not transferred or distributed within seven days of the date the account
> was valued and were denied the investment gains.

(Doc. 327 at 2; see also Doc. 306.)  The Class Period is defined as August 17, 2003 through

May 9, 2013.  (Doc. 306 at 19.)  Plaintiffs allege the class exceeds 20,000.  Compl. ¶¶ 32-33.

The Consolidated Fourth Amended Complaint, the current class action complaint, alleges

Defendants engaged in prohibited transactions and wrongfully used customer funds in violation

of their fiduciary duties of loyalty and impartiality by keeping the funds invested for purposes

other than the customers' benefit after a transfer or redemption request and subsequently

compensating some, but not all, customers for delayed payment.  See Compl.  There are three

separate ERISA counts in the complaint:  (1) breach of fiduciary duty of loyalty; (2) breach of

fiduciary duty of impartiality; and (3) prohibited transactions.  Id. ¶¶ 1, 41-55.  Plaintiffs seek, on

behalf of the class, compensatory damages and equitable relief, including disgorgement, under

ERISA section 502(a), and attorney's fees.  Id. at 13-14.

Both Bauer-Ramazani and Duffy are St. Michael's College ("St. Michael's") professors

and were account owners of TIAA-CREF retirement accounts until 2007, during the time the

St. Michael's retirement plan placed retirement assets of plan participants with TIAA-CREF.

(Doc. 342 ¶ 94; Doc. 366 ¶ 94.)  In 2006, St. Michael's, as administrator of the plan, directed

TIAA-CREF to transfer plan participants' retirement accounts to another mutual fund platform,

Milliman USA.  (Doc. 342 ¶ 86; Doc. 366 ¶ 86.)  TIAA-CREF refused, claiming the college had

no authority to direct it to transfer the accounts because they were subject to individual contracts between TIAA-CREF and the participants. Compl. ¶ 15. The plan obtained and forwarded to TIAA-CREF the individual signatures of over 750 St. Michael's employees to authorize the transfer. (Doc. 342 ¶¶ 88-89; Doc. 366 ¶¶ 88-89.) The accounts were to be valued as of May 1, 2007. Compl. ¶ 19; Doc. 342 ¶ 93; Doc. 366 ¶ 93. The prospectuses state transfers "are effective at the end of the business day we receive your request and all required documentation," or a client could "choose to have [a] transfer[] . . . take effect at the end of any future business day." (Doc. 61-4 at 51.) The prospectuses in effect during the Class Period[2] provide TIAA-CREF will make payments on transfer and withdrawal requests within seven days from the effective date. See Doc. 342 ¶ 43; Doc. 366 ¶ 43.

Because each TIAA-CREF variable annuity account is valued daily, an account's value may increase or decrease between the effective date and the date a transfer or withdrawal is completed, i.e. the processing date. (Doc. 342 ¶ 45; Doc. 366 ¶ 45.) Plaintiffs claim "TIAA-CREF must disgorge the investment gains generated by [their] funds after [they] requested them back, or pay other compensation for the use of such funds." (Doc. 204 at 3.) TIAA-CREF refers to the increase or decrease in account values as Transactional Fund Earnings or Transaction Fund Expense (collectively, "TFE"), respectively. (Doc. 342 ¶ 47; Doc. 366 ¶ 47.) For withdrawals or transfers, if the market value of an account declines between the effective date and processing date of a transaction, the difference in value is recorded as a TFE loss on a TIAA-CREF expense account. Conversely, if the market value of an account increases between the dates, the

---

[2] The Real Estate Account prospectuses do not contain a seven-day payment provision or state any other period of time within which transfer or withdrawal payments will be completed. See Doc. 342 ¶ 44.

difference in value is recorded as a TFE gain on the TIAA-CREF account.  (Doc. 342 ¶ 48; Doc. 366 ¶ 48.)  If the total TFE gains are greater than the TFE losses for a given quarter, operating costs for the next quarter are reduced by the net TFE gain; if the total TFE gains are less than the total TFE losses for a given quarter, operating costs will be higher as a result of the net TFE loss.  (Doc. 342 ¶ 52; Doc. 366 ¶ 52.)

Defendants received Duffy's transfer authorization prior to May 1.  Compl. ¶ 18; Doc. 342 ¶ 96; Doc. 366 ¶ 96.  Duffy's account was partially transferred on May 7, 2007, and the transfer completed on May 9, 2007.[3]  Compl. ¶¶ 23-24; Doc. 342 ¶ 97; Doc. 366 ¶ 97.  The check sent represented the value of her account as of May 1 though she alleges the account value had increased by more than $1,000.00 in the interim.  Compl. ¶ 24.  She alleges funds in her account remained invested between May 1 and May 9.  Id.  TIAA-CREF paid Duffy "delayed payment interest" and "top-up" payments in connection with the transfer of her account to Milliman.  (Doc. 342 ¶ 69; Doc. 366 ¶ 69.)

Defendants received Bauer-Ramazani's transfer authorization on May 17.  Compl. ¶ 18; Doc. 342 ¶ 98; Doc. 366 ¶ 98.  Bauer-Ramazani's account was transferred on May 21, 2007, and the check represented the value of her account as of May 1 though the account value had increased "by thousands of dollars" in the interim.  Compl. ¶ 22; Doc. 342 ¶ 100; Doc. 366 ¶ 100.  She alleges the funds in her account remained invested between May 1 and May 21. Compl. ¶ 22.  TIAA-CREF paid Plaintiff Bauer-Ramazani "delayed payment interest" and "top up" payments (Doc. 342 ¶ 69; Doc. 366 ¶ 69) to "provide compensation for the delays [she] experienced" (Doc. 138-3 at 2).

_____

[3] The parties agree the date on which a transfer or withdrawal is completed is the "processing date."  (Doc. 342 ¶ 42; Doc. 366 ¶ 42; Doc. 376-1 ¶ 42.)

5

Delayed payment interest ("DPI") is payments TIAA-CREF has made to investors since 2003 to compensate investors when payment on a transfer or withdrawal request is not made within seven days of the effective date.  (Doc. 342 ¶ 61; Doc. 366 ¶ 61.)  TIAA-CREF calculates DPI by applying a set interest rate to the value of the investor's account on the effective date for the period of time between the effective date and processing date.  (Doc. 342 ¶ 62; Doc. 366 ¶ 62.)  In 2004, TIAA-CREF began to convert from one computer recordkeeping system to another which caused TIAA-CREF to process a number of investors' transfer and withdrawal payments beyond seven days.  (Doc. 342 ¶ 64; Doc. 366 ¶ 64.)  In 2008, TIAA-CREF voluntarily made additional, one-time "top-up" payments of DPI to investors who made a withdrawal between October 2005 and March 2008, and experienced a payment delay of greater than three days.  (Doc. 342 ¶ 66; Doc. 366 ¶ 66.)  The top-up payments were also calculated using a set interest rate.  (Doc. 342 ¶ 67; Doc. 366 ¶ 67.)  Investors who received DPI payments and qualified for top-up payments were given the difference between the top-up payment and DPI payment(s) they had already received.  (Doc. 342 ¶ 68; Doc. 366 ¶ 68.)  As noted above, Plaintiffs Duffy and Bauer-Ramazani each received DPI and top-up payments.  (Doc. 342 ¶ 69; Doc. 366 ¶ 69.)

In October 2007, Richard Rink, a college professor in Kentucky, filed a class action lawsuit against College Retirement Equities Fund ("CREF") alleging CREF delayed his distribution request for over six weeks and seeking the investment gains allegedly gained on his funds between the effective date of the request and the date the funds were actually sent.  See Doc. 342 ¶ 71; Doc. 366 ¶ 71.  In May 2012, the parties entered into a Settlement Agreement providing each class member "the difference between the amount CREF distributed or

transferred . . . and the per-unit price times total number of units associated with each distributed or transferred fund(s) governed by a CREF Contract . . . on the date of distribution or transfer" plus interest.  See Doc. 342 ¶ 71; Doc. 366 ¶ 71; Doc. 342-34 (Rink Settlement Agreement) at 7. The Kentucky state court issued final approval of the Settlement Agreement in September 2012. (Doc. 342 ¶ 73; Doc. 366 ¶ 73; Doc. 342-35 (Rink Order of Final Approval).)  The class consisted of individuals with non-ERISA accounts (Doc. 342 ¶ 74; Doc. 366 ¶ 74) with a class period of October 1, 2005 to March 31, 2008.  (Doc. 342-35 at 5.)  The Settlement Agreement stated CREF entered the agreement "without acknowledging any fault, liability, or wrongdoing of any kind," "expressly den[ying] that it [] engaged in any misconduct," and "agree[ing] to settle to avoid the continued expense and distraction of litigation."  (Doc. 342-35 at 23.)

This case is specially assigned for trial from January 21-24, 2014.  (Doc. 395.)

III.   Motion for Summary Judgment

A.   Legal Standard

Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.  A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The Court must resolve ambiguities and draw inferences in favor of the non-moving party.  Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citation omitted).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997) (internal quotation marks and citation omitted).  Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the factfinder, not for the court on a motion for summary judgment.  See, e.g., Fed. R. Civ. P. 56(e) 1963 advisory committee's note; Anderson, 477 U.S. at 255.

B.    Discussion

ERISA "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983); Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 47 (2d Cir. 2009) (noting ERISA's central purpose is "to protect beneficiaries of employee benefit plans").  Section 404(a) of ERISA sets out the basic obligations of fiduciaries acting in connection with an ERISA benefits plan. 29 U.S.C. § 1104.  "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or . . . management or disposition of its assets . . . or [(ii)] he has any discretionary authority or responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to [them] and defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A).  The duty of care

imposed by ERISA requires fiduciaries to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  ERISA also requires fiduciaries act "in accordance with the documents and instruments governing the plan insofar as [they] are consistent with the [statute]."[4]  29 U.S.C. § 1104(a)(1)(D).

The definition of fiduciary in ERISA, 29 U.S.C. § 1002(21)(A), is grounded "in <u>functional</u> terms of control and authority over the plan." <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 262 (1993) (citing 29 U.S.C. § 1002(21)(A)).  The term fiduciary under ERISA is construed broadly:  "The definition includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title." <u>Blatt v. Marshall & Lassman</u>, 812 F.2d 810, 812 (2d Cir. 1987) (citation omitted); <u>see also</u> <u>United States v. Glick</u>, 142 F.3d 520, 527 (2d Cir. 1998).

To establish a breach of fiduciary duty under ERISA, a plaintiff must demonstrate "some causal link between the alleged breach of [the fiduciary's] duties and the loss plaintiff seeks to recover." <u>Silverman v. Mutual Benefit Life Ins.</u>, 138 F.3d 98, 104 (2d Cir. 1998).  When assessing a fiduciary's conduct and decisions, the Court must focus on the facts as they existed at the time of the challenged transaction:  hindsight cannot form the basis of an ERISA claim. <u>Henry v. Champlain Enters.</u>, 445 F.3d 610, 618 (2d Cir. 2006); <u>Katsaros v. Cody</u>, 744 F.2d 270, 279 (2d Cir. 1984).  If a fiduciary is found to have breached the obligations imposed by ERISA,

---

[4] "[W]hile failure to follow plan documents may constitute a breach of fiduciary duty, compliance with the terms of the plan does not, by itself, satisfy ERISA imperatives." <u>In re Polaroid ERISA Litig.</u>, 362 F. Supp. 2d 461, 474 (S.D.N.Y. 2005) (citations omitted).

he or she is liable to restore any losses to the plan that resulted from each breach, and may also be subject to any equitable or remedial relief the court deems appropriate.  See 29 U.S.C. § 1109(a).

        1.    Count I:  Duty of Loyalty Claim

Plaintiffs assert in Count I that TIAA-CREF breached its ERISA fiduciary duty of loyalty by investing or keeping invested retirement funds of class members "for purposes other than their benefit for a period other than that permitted by the prospectus."  Compl. ¶¶ 41-45.  They seek disgorgement of any investment profits.  Id. ¶ 44.

TIAA-CREF argues Plaintiffs' duty of loyalty claim fails because they cannot show Defendants acted with an improper motive and no TIAA-CREF entity acted as an ERISA fiduciary in handling TFE.  (Doc. 341 at 12-23.)

At the outset, the Court notes Defendants have not cited authority including a clear requirement of "improper motive" before an ERISA breach of fiduciary duty claim may be stated.  See Doc. 341 at 12-17.  They point to § 1104(a)(1) as including such a requirement by its "plain terms" (Doc. 376 at 1; see also Doc. 341 at 12); Defendants overreach.  As noted above, the standard of care is objective.  29 U.S.C. § 1104(a)(1)(B).  Defendants' reliance on Donovan v. Bierwirth, 680 F.2d 263 (2d Cir. 1982), is also unpersuasive.  The Donovan Court remanded the case after finding the lower court was warranted in concluding, on a motion for preliminary injunction, that the trustees had breached their fiduciary duty under § 1104(a) notwithstanding the trustees' honest conviction regarding their actions and noting "[h]ow the situation will appear after a trial is a different matter which we cannot now decide."  Id. at 276.

Plaintiffs point to Lowen v. Tower Asset Management, 829 F.2d 1209 (2d Cir. 1987), as support for the proposition that bad faith is not an element of a breach of fiduciary duty claim or

good faith a defense.  (Doc. 367 at 19-20.)  The <u>Lowen</u> Court, however, was applying the ERISA prohibited transactions rule.  829 F.2d at 1213.  As noted by Plaintiffs, the Third Circuit Court of Appeals has stated:  "ERISA does not require a showing of bad faith."  <u>Byrne v. Calastro</u>, 205 F. App'x 10, 15 (3d Cir. 2006).  In reply, Defendants argue improper motive is distinct from bad faith.  <u>See</u> Doc. 376 at 4.  In the absence of clear direction from a persuasive authority and in light of the statutory objective standard of care, the Court will not read an "improper motive" requirement into the claim for breach of fiduciary duty.  Accordingly, Defendants' first argument in support of dismissing Count I is rejected.

Defendants' argue secondly that Count I should be dismissed because no TIAA-CREF entity acted as an ERISA fiduciary in handling the TFE.  (Doc. 341 at 17-23.)  In a suit alleging breach of fiduciary duty, the "threshold question" is whether the defendant was acting as a fiduciary, i.e., was performing a fiduciary function, "when taking the action subject to complaint."  <u>Pegram v. Herdich</u>, 530 U.S. 211, 226 (2000).  The action subject to complaint, as alleged in the Consolidated Fourth Amended Complaint, is Defendants' "investing or keeping invested funds in Plaintiffs' retirement accounts for purposes other than [Plaintiffs'] benefit."  Compl. ¶ 41 (citing 29 U.S.C. § 1002(21)(A)).  Though Plaintiffs do not cite a specific subsection of § 1002(21)(A), they do not allege Defendants rendered investment advice to the plan or had discretionary authority or responsibility in the administration of the plan.  <u>See</u> 29 U.S.C. § 1002(21)(A)(ii-iii).  Accordingly, the Court focuses on whether Defendants exercised "any authority or control respecting management or disposition of [the plan's] assets."  <u>Id.</u> § 1002(21)(A)(i).

Defendants admit shares in their variable annuities held by Plaintiffs' participant accounts are plan assets.  (Doc. 341 at 19.)  Plaintiffs requested transfer of their accounts, i.e., plan assets, to Milliman USA.  As the <u>Blatt</u> Court held, the exercise of actual control over the disposition of plan assets renders defendant a fiduciary "to the extent of this actual control."  812 F.2d at 813. Because no one other than a Defendant could effect the transfer, Defendants must have exercised actual control over the plan assets to complete the transfer.  A finder of fact could conclude Defendants' transfer of Plaintiffs' participant account values to Milliman outside the seven-day window provided in the prospectus was an exercise of actual control over disposition of plan assets such that Defendants acted as ERISA fiduciaries.  Accordingly, Defendants' second argument in support of dismissing Count I is rejected.  When viewed in the light most favorable to Plaintiffs as the parties opposing summary judgment, triable issues of fact as to whether a Defendant acted as a fiduciary in transferring Plaintiffs' retirement account funds remain.  Defendants' motion for summary judgment is denied with regard to the breach of fiduciary duty of loyalty claim.

2.     <u>Count II:  Duty of Impartiality Claim</u>

Plaintiffs assert in Count II that TIAA-CREF breached its ERISA fiduciary duty of impartiality "[b]y compensating certain customers but not others whose transfers or distributions were delayed for their lost investment experience."  Compl. ¶ 48.  They seek "the difference between the amount which TIAA-CREF paid and the lost investment experience such participants and beneficiaries actually suffered."  <u>Id.</u> ¶ 49.

Defendants argue Plaintiffs' duty of impartiality claim fails because no such duty exists with regard to all customers and no TIAA-CREF entity acted as an ERISA fiduciary in settling with other customers.  (Doc. 341 at 24-29.)

Both parties point to Morse v. Stanley, 732 F.2d 1139 (2d Cir. 1984), as support for the proposition that an ERISA fiduciary owes a duty of impartiality.  (Doc. 341 at 24; Doc. 367 at 17.)  The Morse Court explains a trustee has a duty to deal impartially with "Plan participants and retired beneficiaries and/or their families [and] [t]he trustee must deal even-handedly among them, doing his best for the entire trust looked at as a whole."  732 F.2d at 1145 (citations omitted).  Plaintiffs also note the "duty applies across plans," citing John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit Sharing Plan, 26 F.3d 360 (2d Cir. 1994). (Doc. 367 at 17.)

Defendants first argue there is no duty of impartiality with regard to all customers that "requires entities that offer products and services to an ERISA plan to deal with the plan and its participants on precisely the same terms on which they deal with all other clients."  (Doc. 341 at 25.)  Plaintiffs' citation to John Blair does not refute this argument because in that case a trustee was acting as a "dual fiduciary:  it owed obligations of loyalty to the members of [two] plans."  26 F.3d at 367.  Plaintiffs do not allege, nor can they, that the non-ERISA plaintiffs with whom TIAA-CREF settled in the Rink case were members of another plan for which Defendants were acting as a dual fiduciary along with the St. Michael's Plan or that they were plan participants, beneficiaries or their families with whom Defendants were required to deal even-handedly with members of the St. Michael's Plan.  While Plaintiffs do not make a strong case for

finding a duty of impartiality is owed as between the Rink plaintiffs and the St. Michael's Plan members, their claim fails even if the duty is assumed.

Defendants argue secondly that Count II should be dismissed because -- even if there is such a duty of impartiality owed -- no TIAA-CREF entity acted as an ERISA fiduciary in settling the Rink case.  (Doc. 341 at 25-26; Doc. 376 at 13-14.)  As noted above, when breach of fiduciary duty is alleged, the "threshold question" is whether the defendant was acting as a fiduciary, i.e., was performing a fiduciary function, "when taking the action subject to complaint."  Pegram, 530 U.S. at 226.  Plaintiffs allege TIAA-CREF "must be deemed a fiduciary" under ERISA because "[b]y investing or keeping invested funds in Plaintiffs' retirement accounts for purposes other than their benefit, TIAA-CREF exercised authority or control respecting the management or disposition of such accounts."  Compl. ¶ 46 (citing 29 U.S.C. § 1002(21)(A)).  This is the same argument made with regard to their breach of the fiduciary duty of loyalty claim.  See supra Part III.B.1.  Plaintiffs' actual complaint in this claim, however, complains of Defendants' action in "compensating certain customers but not others," i.e., settling the Rink case.  Compl. ¶ 48 ("By compensating certain customers but not others whose transfers or distributions were delayed for their lost investment experience, TIAA-CREF violated its fiduciary duty of impartial treatment . . . .").

As above, the Court focuses on whether Defendants exercised "any authority or control respecting management or disposition of [the plan's] assets," 29 U.S.C. § 1002(21)(A)(i), in taking the complained of action.  As noted, Plaintiffs have not and cannot allege the plaintiffs in Rink were plan participants or beneficiaries and have not alleged the settlement involved the St. Michael's Plan -- or any other ERISA covered plan -- or ERISA plan assets.  The Rink

settlement resolved litigation with a class of non-ERISA account holders.  Plaintiffs have also

not alleged or pointed to any evidence that Defendants used ERISA plan assets instead of their

own assets in funding the settlement.  Here, even viewed in the light most favorable to Plaintiffs,

a reasonable fact finder could not find Defendants were acting in an ERISA fiduciary capacity[5] in

settling the Rink case.  See Bell v. Pfizer, Inc., 626 F.3d 66, 74 (2d Cir. 2010) (noting fiduciary

status is assumed only when functioning in that capacity, not when conducting business that is

not regulated by ERISA).  Accordingly, Plaintiffs' claim for breach of the duty of impartiality

based on Defendants' settling of the Rink case fails.  Defendants' motion for summary judgment

with regard to Count II is granted.  Count II is dismissed.

3.     Count III:  Prohibited Transactions Claim

Plaintiffs assert in Count III that each defendant violated Section 406(a)(1)(D) of ERISA

by investing Plaintiffs' assets for more than seven days following the effective date.  Compl.

¶¶ 51-53 (citing 29 U.S.C. § 1106(a)(1)(D)).  They seek disgorgement of all amounts earned on

the accounts following a request for redemption or transfer under Section 502(a)(3) of ERISA.

Id. ¶ 54 (citing 29 U.S.C. § 1132(a)(3)).

Defendants argue the claim "fails at its premise because TIAA-CREF did not invest any

'amounts in the retirement accounts of Plaintiffs' after the respective Effective Dates of their

transfers and withdrawals."  (Doc. 341 at 29.)  Secondly, they argue Plaintiffs cannot establish

TIAA-CREF intended its TFE practice to benefit a party in interest.  Id. at 30.  And lastly,

---

[5] Plaintiffs assert, with regard to their breach of fiduciary duty of loyalty claim, the issue of whether a defendant is an ERISA fiduciary is a mixed question of law and fact.  (Doc. 367 at 31-32.)  The Second Circuit, however, has recently decided as a matter of law the issue of whether a defendant was acting in an ERISA fiduciary capacity.  See, e.g., Fisher v. JP Morgan Chase & Co., 469 F. App'x 57, 60 (2d Cir. 2012) (on motion to dismiss); Gearren v. McGraw Hill Cos., 660 F.3d 605, 611 (2d Cir. 2011) (on motion for judgment on the pleadings).

Defendants argue Plaintiffs cannot demonstrate the practice benefitted parties in interest to their plan. Id. at 31.

Section 406(a)(1)(D) of ERISA, codified at 29 U.S.C. § 1106(a)(1)(D), provides in part: "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction if he knows or should know that such transaction constitutes a direct or indirect . . . use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). A party in interest is defined as including any fiduciary of an employee benefit plan. Id. at § 1002(14)(A). Congress designed § 1106 to prohibit transactions that would clearly injure a plan by benefitting parties in interest at the expense of plan participants and beneficiaries. See Lockheed Corp. v. Spink, 517 U.S. 882, 888 (1996). Accordingly, § 1106 "'requires proof that the fiduciary in question either knew or reasonably should have known that the transaction constituted' a prohibited transaction" and that "'the transaction's use of assets is "for the benefit of" a party in interest.'" In re Beacon Assocs. Litig., 745 F. Supp. 2d 386, 421 & n.22 (S.D.N.Y. 2010) (quoting Reich v. Compton, 57 F.3d 270, 279-80 (3d Cir. 1995).

Assuming Defendants are fiduciaries with respect to the complaint raised in Count III, Plaintiffs have not pointed to any facts demonstrating Defendants knew or should have known the TFE practice was a prohibited transaction because it would injure the plan. Plaintiffs' citation to Lowen, 829 F.2d 1209, for the proposition that "'liability must be imposed even when there is no taint of scandal, no hint of self-dealing, no trace of bad faith,'" (Doc. 367 at 30 (quoting Lowen, 829 F.2d at 1213)), is unavailing. In Lowen, the Second Circuit was applying ERISA § 406(b), the prohibition on self-dealing transactions, not § 406(a), the prohibition on transactions between a plan and a party in interest.

16

Plaintiffs were entitled to the effective date value of their accounts, whether or not that value increased or decreased.  (Doc. 61-4 at 51, 62.)[6]  Defendants' practice applied even-handedly in both increasing and decreasing markets.  A fiduciary's actions cannot be judged in hindsight.  Henry, 445 F.3d at 618.  Therefore, at the time of each allegedly prohibited transaction, Defendants could not have known whether the plan -- assuming the plan was affected by the TFE practice -- would be injured.  Even when drawing all inferences in favor of Plaintiffs as the non-moving party, Plaintiffs have not demonstrated a genuine issue of material fact with regard to Defendants' knowledge.  Therefore, Defendants are entitled to summary judgment on the prohibited transaction claim asserted in Count III.  Count III is dismissed.

IV.    Motion to Strike Jury Demand

Defendants move to strike Plaintiffs' demand for a jury trial under Federal Rule of Civil Procedure 39(a)(2).  (Doc. 358.)  Plaintiffs oppose the motion (Doc. 372) and Defendants replied (Doc. 377).  Rule 39 provides:  "When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action.  The trial on all issues so demanded must be by jury unless: . . . (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."  Fed. R. Civ. P. 39(a)(2).  Rule 38 states the right to trial by jury under the Seventh Amendment to the Constitution or as provided by federal statute "is preserved to the parties inviolate."  Fed. R. Civ. P. 38(a).  Plaintiffs properly demanded a jury trial "on all issues so triable" in their complaint.  See Fed. R. Civ. P. 38(d); Compl. at 14.

---

[6] The Court notes it held that Defendants' treatment of St. Michael's College plan accounts that received payment within seven days from the effective date, as the prospectus required, was not a violation of ERISA.  (Doc. 186 at 3 (citing Doc. 61-4 at 51, 62).)  Plaintiffs have not alleged Defendants' TFE practice was different for accounts with delayed payments.

Plaintiffs first argue Defendants' motion is untimely as it is filed four years after commencement of the litigation, shortly before trial, and after five complaints have each included a jury trial demand.  (Doc. 372 at 2.)  Rule 39(a)(2) does not limit the time by which a party must object to a jury demand.  Fed. R. Civ. P. 39(a)(2).  Accordingly, parties "'have a great deal of latitude on the timing of motions to strike a jury demand,'" but the court has discretion to decide whether a motion to strike a jury demand is timely or too late.  Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 226-27 (3d Cir. 2007) (quoting Moore's Federal Practice ¶ 8-39.13).  Plaintiffs fail to support their argument that Defendants waived their objection to the jury demand.  The cases they cite primarily involve jury trial waiver agreements entered prior to litigation, not the waiver of the right to object to the demand after litigation has begun. See Doc. 372 at 2 (citing cases).  The Court finds Defendants' motion to strike is timely.

The parties agree ERISA does not expressly provide the right to a jury trial.  (Doc. 358 at 2; Doc. 372 at 3.)  Accordingly, if Plaintiffs have a right to a jury trial, it must flow from the Seventh Amendment.  The Seventh Amendment provides:  "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII.  The Supreme Court has interpreted the phrase "suits at common law" to mean suits in which legal rights were to be ascertained, as opposed to suits in which equitable rights were recognized and equitable remedies were administered.  Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989).  The Court must both compare the action to eighteenth century actions brought in the courts of England prior to the merger of courts of law and equity and examine the remedy to determine whether it is legal or equitable in nature.  Tull v. United

States, 481 U.S. 412, 417-18, 421 (1987).  The second stage of the analysis is more important than the first.  Granfinanciera, 492 U.S. at 42.

Legal remedies traditionally involve money damages.  Mertens v. Hewett Assocs., 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of legal relief."). Equitable remedies are typically coercive, enforceable directly on the person or thing to which they are directed, and discretionary.  Int'l Fin. Serv. Corp. v. Chromas Tech. Canada, Inc., 356 F.3d 731, 736 (7th Cir. 2004).

The right to a jury trial is determined from the pleadings.  See Westchester Day Sch. v. Vill. of Mamaroneck, 504 F.3d 338, 356 (2d Cir. 2007).  On their remaining claim for breach of fiduciary duty of loyalty, Plaintiffs seek damages under ERISA sections 409, 502(a)(2), and 502(a)(3), codified at 29 U.S.C. §§ 1109(a), 1132(a)(2-3).  Compl. ¶ 44.  In concluding their complaint, they request as relief "compensatory damages and appropriate equitable relief, including disgorgement, for TIAA-CREF's breach of its fiduciary duties under sections 502(a)(2) and 502(a)(3) of ERISA."  Id. at 13.  Plaintiffs acknowledge courts do not generally recognize a right to a jury trial for claims under ERISA § 502(a)(3).  (Doc. 372 at 2 n.1.)  They also acknowledge ERISA breach of fiduciary duty claims are equitable in nature, essentially conceding the first prong of the test weighs against a jury trial.  Id. at 4.

Turning to the second prong of the test -- whether the remedy sought is legal or equitable in nature -- ERISA § 502(a)(2), codified at 29 U.S.C. § 1132(a)(2), provides a participant may sue for "appropriate relief under section 1109," and § 1109 provides for personal liability of fiduciaries "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of

19

assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). Section 1109 also provides for "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." Id. Plaintiffs represent a class of participants and allegedly seek relief on behalf of ERISA Plans. See Compl. ¶ 44. Sections 1109(a) and 1132(a)(2) entitle them to sue Defendants as alleged fiduciaries for damages or equitable relief arising from the alleged breach of fiduciary duty. Thus, the issue is whether Plaintiffs have sued Defendants for damages under ERISA § 502(a)(2) or have sought an equitable remedy under that section.

Plaintiffs argue the relief they seek -- "restitution of the value of the investment gains on their accounts between the so-called 'Effective Date' or 'Good Order Date' and the date on which their shares were transferred or redeemed" (Doc. 372 at 8) -- is legal in nature because they are not seeking restitution of specific, traceable funds in Defendants' possession. Id. at 9. They rely on Great-West Life & Annuity Ins. Co. v. Knudsen, 534 U.S. 204 (2002), a case brought by a fiduciary against a tort-award-winning plan beneficiary seeking reimbursement for outlays the plan made on the beneficiary's behalf. (Doc. 372 at 4-9.) The Great-West Court held, because the money sought from the beneficiary was not the "particular money" the tort defendant paid, the relief sought -- a lien -- was legal, not equitable because the funds in question were not "particular funds or property in the [beneficiary's] possession." 534 U.S. at 213.

Defendants respond by pointing to CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011), a more recent Supreme Court case examining available remedies under ERISA § 502(a). (Doc. 377 at 5-7.) The Amara Court explained: "Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this

20

kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'" 131 S. Ct. at 1880 (citations omitted).  The "surcharge" remedy covers any breach of a fiduciary duty.  See id.

The Court finds the remedy Plaintiffs seek -- "the value of the use of the plan assets" and "disgorgement of any investment profits made through the use of [Plaintiffs'] funds," Compl. ¶ 44 -- for Defendants' alleged breach of fiduciary duty is equitable in nature.  This case is distinguishable from Great-West.  In that case there was no breach of fiduciary duty claim:  the fiduciary itself was the plaintiff, suing a beneficiary.  Accordingly, the second prong of the test also weighs against a jury trial.[7]  Defendants' motion to strike Plaintiffs' demand for a jury trial is therefore granted.

In the event the Court determined Plaintiffs are not entitled to a jury trial, as it has, Plaintiffs request the Court employ an advisory jury under Federal Rule of Civil Procedure 39(c).  (Doc. 372 at 11-12.)  They argue it could help prevent the need for a second trial and is within the Court's discretion.  Id. at 11.  Defendants oppose the request; they acknowledge the Court has the discretion to empanel an advisory jury, but argue such a jury would serve no purpose.  (Doc. 377 at 7-10.)  If the Court empaneled an advisory jury, it must still "make its own factual findings and conclusions of law."  DeFelice v. Am. Int'l Life Assurance Co. of N.Y., 112 F.3d 61, 65 (2d Cir. 1997).  Empaneling an advisory jury would further burden the Court during the short period of time before trial -- scheduled for January 21-24, 2014 -- by requiring it to expend resources addressing voir dire, jury instructions, and potentially unnecessary evidentiary rulings.

---

[7] The Court notes Healthcare Strategies, Inc. v. ING Life Ins. Annuity Co., No. 3:11-cv-282, 2012 WL 162361 (D. Conn. Jan. 19, 2012), the only decision post-dating Amara Plaintiffs cite for the proposition that, since Great-West, courts have recognized a right to jury trial under ERISA § 502(a)(2), does not acknowledge the Amara decision.

See In re Currency Conversion Fee Antitrust Litig., MDL No. 1409, 2012 WL 4361443, at *2

(S.D.N.Y. Sept. 11, 2012) (declining an advisory jury because it would waste judicial resources

and generate inefficiencies).  In its discretion, the Court declines to employ an advisory jury in

the interest of judicial economy given the trial schedule in this case.

V.    Conclusion

       For the reasons detailed above, Defendants' motion for summary judgment (Doc. 341) is

granted in part and denied in part.  Counts II (duty of impartiality claim) and III (prohibited

transactions claim) are dismissed.  Defendants' motion to strike Plaintiffs' demand for a jury trial

(Doc. 358) is granted.

       Accordingly, the case will proceed as a bench trial on Count I (duty of loyalty claim),

currently scheduled for January 21-24, 2014.  The parties shall file a joint trial memorandum,

proposed findings of fact and conclusions of law on or before January 3, 2014.  A pre-trial

conference will be held January 17, 2014 at 10:00 a.m. at the United States District Court for the

District of Vermont in Brattleboro, Vermont.  In light of this decision and the recommendation of

the Early Neutral Evaluator, see Doc. 350 at 2, the parties shall conduct a second session with

Evaluator William R. Jentes on or before January 10, 2014.

       SO ORDERED.

       Dated at Brattleboro, in the District of Vermont, this 27th day of November, 2013.

                                      /s/ J. Garvan Murtha
                                      Honorable J. Garvan Murtha
                                      United States District Judge