UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| CHRISTINE BAUER-RAMAZANI and CAROLYN B. DUFFY, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA - COLLEGE RETIREMENT AND EQUITIES FUND (TIAA-CREF), COLLEGE RETIREMENT AND EQUITIES FUND (CREF), TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA (TIAA), TIAA-CREF INVESTMENT MANAGEMENT, LLC (TCIM), TEACHERS ADVISORS, INC. (TAI), AND TIAA-CREF INDIVIDUAL AND INSTITUTIONAL SERVICES, LLC,<br><br>                Defendants. | Docket No. 1:09-cv-190 |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT**

       Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs respectfully move the Court to: (a) preliminarily approve the proposed settlement of the above-captioned class action; (b) schedule a hearing to consider whether the proposed settlement is fair, reasonable, and adequate; and (c) direct notice of the proposed settlement and hearing to the Class in substantially the form of Exhibit II hereto and in the manner described herein.

**INTRODUCTION**

The parties to this action have negotiated a proposed class-wide settlement that provides significant monetary and injunctive relief to Class Members[1] whom Plaintiffs claim were not paid the increase in the value of their accounts between the time they requested a transfer or withdrawal of their funds from Defendants and the time that Defendants actually processed their transfer or withdrawal requests. Under the terms of the proposed settlement, Defendants would pay $19.5 million into a settlement fund to be distributed to Settlement Class Members pro rata based on the amount of transaction fund expenses ("TFE") generated in connection with each Settlement Class Member's relevant transactions. Defendants would also make certain disclosures in their prospectuses and statements to their customers. In exchange, Plaintiffs and the Settlement Class Members would release Defendants from claims that were or could have been raised in this lawsuit.

This litigation was filed on August 17, 2009. Since that time, Plaintiffs have conducted extensive discovery – reviewing thousands of documents and conducting nineteen fact witness depositions. The parties engaged experts and completed expert discovery. They also engaged in significant motion practice, including a motion for summary judgment that resulted in one of Plaintiffs' three claims remaining to be tried in a bench trial that was set to commence on January 21, 2014. Thus, the parties had all but litigated this matter through trial when they reached the proposed settlement.

Accordingly, the parties are well aware of the strengths and weaknesses of their respective positions and the proposed settlement is the result of years of litigation and hard-fought, arm's-length negotiations between the parties and their counsel. The benefits to the Settlement Class Members are particularly valuable considering the hurdles faced by Plaintiffs

---

[1] Unless otherwise stated, capitalized terms have the same meaning as ascribed to them in the Class Action Settlement Agreement.

and the Class in litigating the remaining claim through trial and the likely appeal that would follow. In light of the hurdles, and the immediate benefits the settlement would provide the Class, the terms of the proposed settlement are well within "the range of reasonableness" and Plaintiffs respectfully request the Court to grant preliminary approval of the proposed settlement.

## BACKGROUND

**A.      Defendants' Treatment of TFE Gains.**

Defendants refer to the date they receive a customer's request to transfer or distribute funds as the "Effective Date" or "Good Order Date" (assuming all necessary paperwork is in good order), unless a future date is mutually agreed upon. The date that Defendants actually transfer or distribute a customer's funds as requested is the "Transaction Date" or "Processing Date." During the period from August 17, 2003 through May 9, 2013, Defendants had delays, at times of more than seven days, between the Effective Date and the Processing Date.

Because of market movements, the value of the CREF or TIAA variable annuity products in which customers invest can change between the Effective Date and the Processing Date. Defendants refer to the difference between the per unit value of a variable annuity account on the Effective Date and the per unit value on the Processing Date as "Transaction Fund Expenses" (sometimes "Transaction Fund Earnings") or "TFE" for short. TFE losses are generated when the per unit value of a variable annuity decreases between the Effective Date and the Processing Date of a transfer or withdrawal request; TFE gains are generated when the per unit value of a variable annuity increases in value between the Effective Date and the Processing Date.

When Defendants process a customer's transfer or withdrawal request, they pay the customer the value of his or her account as of the Effective Date, regardless of whether the variable annuity account increased in value or decreased in value between the Effective Date and the Processing Date. Plaintiffs contend that Defendants' practice of keeping the TFE gains instead of paying them to the customer violates ERISA. Specifically, Plaintiffs complain that by retaining the TFE gains, Defendants breached their fiduciary duty to act solely in the interests of participants and their beneficiaries and for the exclusive purpose of providing benefits to

participants and their beneficiaries. (D.E. 205, 4th Am. Complt. ¶¶ 41-45.) Defendants deny that they retained TFE gains for themselves and deny that they breached any fiduciary duties or otherwise did anything wrong, and contend, among other things, that they credited participants with the full value of their investments as calculated in accordance with the applicable prospectuses and federal law, and compensated participants with appropriate interest for any delays in the processing of individual transactions despite being under no obligation to do so.

**B.     Procedural History of This Litigation.**

The original complaint in this action was filed on August 17, 2009. (D.E. 1.) The named plaintiff in the original complaint was Norman Walker; however, Walker's claims were dismissed on summary judgment. (D.E. 186, 222.) Plaintiffs Christine Bauer-Ramazani and Carolyn B. Duffy moved to intervene as named plaintiffs and class representatives (*see* D.E. 68, 140), and the Court granted their motions to intervene on August 25, 2011 and October 3, 2012, respectively (D.E. 101, 202). Bauer-Ramazani and Duffy filed the operative complaint, the Consolidated Fourth Amended Complaint, on October 12, 2012. (D.E. 205.) The Consolidated Fourth Amended Complaint asserts three claims against Defendants for: (1) allegedly breaching their fiduciary duty of loyalty pursuant to ERISA § 404 (Count I); (2) allegedly breaching their fiduciary duty of impartiality pursuant to ERISA § 404 (Count II); and (3) allegedly engaging in prohibited transactions pursuant to ERISA § 406 (Count III). The fact and expert discovery deadline was May 31, 2013. (D.E. 294.)

On May 9, 2013, the Court granted in part and denied in part Plaintiffs' motion for class certification. (D.E. 306.) The Court certified a class (D.E. 306) and later amended the class definition to be:

> All persons, including all 'persons' as defined by 29 U.S.C. § 1002(9), who at any time during the Class Period requested a transfer or distribution of funds held in a CREF or TIAA variable annuity account covered by ERISA whose funds were not transferred or distributed within seven days of the date the account was valued and denied the investment gains.

(D.E. 327.) The Court defined the "Class Period" as the period from August 17, 2003 through May 9, 2013. (D.E. 306.) Notice of the pendency of a class action was provided to the Class through mail, email (where available), and publication. (D.E. 386.)

On June 14, 2013, Defendants filed a motion for summary judgment. (D.E. 341.) Following the completion of briefing, the Court granted in part and denied in part the motion for summary judgment. (D.E. 404.) Specifically, the Court granted summary judgment as to Counts II and III of the Consolidated Fourth Amended Complaint, and denied summary judgment as to Count I, the claim for breach of the fiduciary duty of loyalty. This matter was set for trial to commence on January 21, 2014. (D.E. 295.)

The parties participated in a neutral evaluation and mediation of this matter in June 2013; however, they were unable to reach agreement on a settlement at that time. (D.E. 350.) The mediator and the parties continued informal settlement discussions over the next several months and met again on December 16 and 17, 2013, to discuss potential resolution of this case. Following lengthy and hard-fought negotiations, on December 17, 2013, the parties agreed to the terms of a proposed settlement, which they subsequently memorialized in a settlement agreement. A true and correct copy of the Settlement Agreement is submitted herewith as Exhibit I.

**C.     Proposed Settlement Terms.**

    1.     The Class.

The proposed settlement would provide relief to the Class previously certified by the Court:

> All persons, including all 'persons' as defined by 29 U.S.C. § 1002(9), who at any time during the Class Period requested a transfer or distribution of funds held in a CREF or TIAA variable annuity account covered by ERISA whose funds were not transferred or distributed within seven days of the date the account was valued and denied the investment gains.

(Ex. I ¶ 7.) For purposes of clarity, however, the Parties mutually agree that this class consists solely of current or former participants or their beneficiaries who, during the Class Period,

requested a transfer or distribution of funds held in a CREF or TIAA variable annuity account covered by ERISA, whose funds were not transferred or distributed within seven days of the Effective Date and who did not receive TFE gains associated with those transfers or distributions.

      2.     <u>Monetary and Injunctive Relief</u>.

The proposed settlement affords these Class Members significant relief through monetary payments and disclosures by Defendants. (Ex. I ¶¶ 30, 43, 62, 64 & 65.) Pursuant to the Settlement Agreement, Defendants would pay $19.5 million into a Settlement Fund. (*Id.* ¶ 30.) This sum represents almost half of the TFE gains Plaintiffs have calculated to be associated with Class Members' transactions where, during the Class Period, Class Members requested a transfer or distribution from CREF or TIAA variable annuity products and Defendants did not process the transfer or distribution within seven days of the Effective Date. The $19.5 million settlement fund will be distributed as follows: first, Class Representatives Duffy and Bauer-Ramazani will each be paid a $7,500 Service Award if approved by the Court; then, the remaining funds will be distributed on a pro rata basis to all Settlement Class Members who do not opt out based on the amount of TFE gains associated with their respective transfers or withdrawals of funds from CREF and/or TIAA variable annuity investments during the Class Period. (*Id.* ¶¶ 59-63, 71.) Settlement Class Members need not submit any claim form to receive payment. (*See id.*)

Payments will be made through a check sent in the United States mail to the last known mailing address available for each Settlement Class Member. (*Id.* ¶ 62.) The Settlement Administrator will make up to three attempts to deliver returned checks, including by referencing the National Change of Address database and skip tracing. (*Id.*) Settlement Class Members will have 180 days in which to cash the checks. (*Id.*) If a Settlement Class Member is unable to be located after these steps or does not cash his or her check within 180 days, then Defendants may use the amount that would be paid to the Settlement Class Member to offset their costs to provide the disclosures described in the Settlement Agreement. (*Id.*) Defendants will pay the

costs of settlement administration separate and apart from the $19.5 million Settlement Fund. (*Id.* ¶ 66.)

In addition to the monetary relief described above, for a period of five years, Defendants will describe their TFE practices in the CREF and TIAA Real Estate Account annual prospectuses in detail comparable to the most recent CREF prospectus. (*Id.* ¶ 64.) Defendants will two times include language in their quarterly participant statements that a description of their operational practices may be found in the section of the CREF and TIAA Real Estate Account prospectuses relating to transactions in the participant's account. (*Id.* ¶ 65.)

       3.      <u>Release of Claims Against Defendants</u>.

In exchange for the relief provided by the proposed settlement, Plaintiffs and Settlement Class Members will release Defendants, and, among others, their parents, affiliates, subsidiaries, predecessors, successors, officers, director, employees, agents, and insurers, from all claims, liabilities, demands, causes of action, or lawsuits, debts, damages, costs, attorneys' fees, obligations, judgments, expenses, compensation, or liabilities known or unknown, and whether anticipated or unanticipated, that were or could have been raised in this action. (*Id.* ¶¶ 24, 25, 37, 38, & 39.) In addition, this action is to be dismissed with prejudice.

       4.      <u>Class Notice</u>.

Class Members will receive notice of the proposed settlement by first-class mail at their last known mailing address in the form of notice submitted herewith as <u>Exhibit II</u>. (*See id.* ¶ 12.) Class Members for whom Defendants have an email address will also receive the notice via email. (*Id.*) The initial mailing and emailing of the notice will occur no later than forty (40) days after entry of an order preliminarily approving the proposed settlement. (*Id.* ¶ 52.) Class Counsel will also post the notice and the settlement agreement on the previously established website (www.TIAA-CREF-lawsuit.com). (*Id.* ¶ 53.)

       5.      <u>Exclusion from the Settlement</u>.

Class members may exclude themselves from the settlement by sending a request for exclusion to the Settlement Administrator postmarked no later than forty-five (45) days prior to

the Fairness Hearing set by the Court.  (*Id.* ¶ 73.)  If more than ten percent (10%) of Class Members request to exclude themselves from the settlement, then Defendants will have the option in their sole discretion to terminate the settlement prior to final approval by the Court.  (*Id.* ¶ 74.)

      6.    <u>Class Counsel Fees and Expenses and Named Plaintiff Service Award</u>.

Under the proposed settlement, subject to court approval, Defendants agree to pay Class Counsel the amount of $3.3 million for fees and expenses incurred in connection with this litigation.  (*Id.* ¶¶ 4, 69 & 70.)  This sum will *not* come from the Settlement Fund, but will be paid separately by Defendants if approved by the Court.  (*Id.* ¶ 4.)  This amount is less than Class Counsel's actual billable time and out of pocket expenses.

    **D.**    **Proposed Schedule.**

Consistent with the terms of the Settlement Agreement, the parties propose the following schedule for notice to the Class, requests for exclusions, filing of objections, filing of Plaintiffs' motion for final approval and entry of judgment, and the Fairness Hearing:

| **Event** | **Proposed Deadline** |
| --- | --- |
| Defendants' Provision of Class Member Information to Settlement Administrator (*see* Order ¶ 6.a) | 20 days after entry of Preliminary Approval Order |
| Posting of Notice on Website (*see* Order ¶ 6.c) | 30 days after entry of Preliminary Approval Order |
| Initial Mailing and Emailing of Notice (*see* Order ¶ 6.b) | 40 days after entry of Preliminary Approval Order |
| Postmark Requests for Exclusion (*see* Order ¶ 8) | 45 days prior to the Fairness Hearing |
| File Objections (*see* Order ¶ 9) | 45 days prior to the Fairness Hearing |
| File Proof of Mailing of Notice and List of Requests for Exclusion (*see* Order ¶¶ 6.d & 8) | 21 days prior to the Fairness Hearing |

| File Motion for Final Approval and Entry of Judgment (*see* Order ¶ 10) | 14 days prior to the Fairness Hearing |
|---|---|
| Fairness Hearing (*see* Order ¶ 3) | No sooner than 180 days after entry of Preliminary Approval Order |

## ARGUMENT

**A.     The Proposed Settlement Meets the Criteria for Preliminary Approval.**

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims, issues, or defenses brought on a class basis.  Approval of a proposed class settlement is a matter within the broad discretion of the district court.  *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).  Voluntary resolution of litigation through settlement is favored by federal courts and "this is particularly true in class actions."  *In re Prudential*, 163 F.R.D. at 209; *see also In re U.S. Oil & Gas Litig.,* 967 F.2d at 493.

Preliminary approval is the first step in the two-step process of approving a class action settlement.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997); *Manual for Complex Litig.* ("MCL") § 21.632 (4th ed. 2004).  First, the Court conducts a preliminary review of the proposed settlement "to determine whether it is sufficient to warrant public notice and a hearing."  MCL § 13.14.  At the preliminary approval stage, the court makes "a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms."  MCL § 21.632.  The primary question raised by a request for preliminary approval is whether a proposed settlement is "within the range of reasonableness" of settlements that could ultimately merit final approval.  *See id.* § 40.42; *see also In re Prudential*, 163 F.R.D. at 210 ("At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval'") (citation omitted).  Preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposed to class members and hold a full-scale hearing as to its fairness.'"  *Menke v. Stolt-Nielsen, S.A.*, 270

9

F.R.D. 80, 101 (D. Conn. 2010) (quoting *In re Traffic Exec. Ass'n – E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)).  Preliminary approval is appropriate where the proposed settlement "is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval." *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 WL 1706778 (D. Vt. May 4, 2011) (quoting *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006)); *see also In re NASDAQ*, 176 F.R.D. at 102.

In considering a proposed settlement, the court need not reach any ultimate conclusions on the substantive factual or legal issues of plaintiffs' claims.  *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  "It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement . . . .  Such procedure would emasculate the very purpose for which settlements are made."  *Id.*  The court should not make the parties "justify each term of settlement against a hypothetical or speculative measure of what concession might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972).

1. <u>The Proposed Settlement Is Entitled to a Presumption of Fairness</u>.

As an initial matter, even before application of the above factors, a proposed settlement is entitled to a presumption of fairness if it is the result of "arm's-length negotiations by experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).  The proposed settlement here is entitled to such a presumption of fairness.  The settlement negotiations were adversarial, conducted at arm's-length at all times, and facilitated by an experienced mediator.  The negotiations were conducted by competent, knowledgeable counsel on both sides.  Plaintiffs' counsel have extensive experience in complex class action litigation and, in entering into the Settlement Agreement on behalf of their clients and the Class, determined that the proposed compromise is fair under all

10

the circumstances, including the substantial monetary compensation offered and the risk, expense and delay of continued litigation.  The negotiations were similarly handled on the defense side by respected and experienced counsel who regularly handle similar complex matters.  Finally, the negotiations were conducted after Plaintiffs had conducted substantial, meaningful discovery – here, fact and expert discovery had closed and the parties were about a month away from trial when the proposed settlement was reached.  A review of the proposed settlement terms confirms the presumption of fairness.

      2.     <u>The Proposed Settlement Falls Within the Range of Possible Final Approval</u>.

The proposed settlement is well within the range of terms warranting final approval and, accordingly, should be granted preliminary approval.  The settlement provides substantial benefits to the Class in the form of a $19.5 million interest-bearing Settlement Fund, plus significant required disclosures by Defendants concerning their TFE practices.  No attorneys' fees or expenses will be deducted from the Settlement Fund – the entire amount will be distributed directly to Settlement Class Members without the need to submit a claim form.  All notice, settlement administration costs, and Court-approved attorneys' fees will be paid separately by Defendants.

The $19.5 million amount represents almost half of the TFE gains Plaintiffs have calculated to be associated with Class Members' transactions where, during the Class Period, Class Members requested a transfer or distribution of funds invested in CREF or TIAA variable annuity products and Defendants did not process the transfer or distribution within seven days of the Effective Date.  Plaintiffs and Class Counsel believe this is a fair, reasonable, and adequate figure based on their understanding of the strengths and weaknesses of the parties' respective positions, the evidence, and the likelihood of protracted litigation if a negotiated resolution was not reached.

The amount of proposed attorneys' fees is also within the range of reasonableness.  The parties agreed that, subject to the approval of the Court, Defendants would pay Class Counsel $3.3 million for attorneys' fees and expenses separate and apart from the $19.5 million

11

settlement fund.  This figure represents less than 15% of $22.8 million (the sum of the Settlement Fund and the fees and expenses exclusive of the costs of class notice, settlement administration and the value of the injunctive relief).  It is also less than the billable equivalent of Class Counsel's actual time and out of pocket expenses.  In light of the monetary amount of the settlement, the injunctive relief, the risk involved in accepting a case on a contingency basis, and the more than four years of work that went into litigating this matter nearly to trial, the proposed attorneys' fees and expenses are reasonable.

### B.     The Proposed Notice Plan Is Reasonable.

Federal Rule of Civil Procedure Rule 23(e) requires "notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."  A trial court is vested with considerable discretion under Rule 23(e) in fashioning the content and manner of notice given to the class members.  *See In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987) (district courts have "considerable discretion . . . in fashioning notice to a class"); 7B Charles A. Wright et al., *Federal Prac. & Procedure* § 1797.6 (3d ed. 2005) (noting that courts have "complete discretion in determining what constitutes a reasonable notice scheme, both in terms of how notice is given and what it contains").

As a general rule, a Rule 23(e) notice should: (1) define the class; (2) summarize the essential terms of the proposed settlement; (3) describe the options available to class members under the proposed settlement, along with any deadlines for exercising those options; (4) disclose any requests for attorneys' fees and special benefits to the class representatives; (5) indicate the time and place of the fairness hearing and describe its purpose; (6) describe the procedures for filing objections and being excluded from the settlement; (7) describe how the settlement fund will be allocated and distributed; and (8) display contact information for class counsel.  *See* MCL § 21.312.  Here, the content of the proposed notice satisfies these guidelines.  (*See* Ex. II (proposed notice).)

The parties propose the manner of notice described above, which they agree is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to notice.  All costs of

distributing the notice in this manner will be paid by Defendants and will not be deducted from the settlement fund.

Accordingly, the Court should approve both the form and content of the proposed notice and the manner of distribution proposed by the parties.

## CONCLUSION

Here, the proposed settlement is the product of arm's-length negotiations by counsel with significant experience in complex class action litigation and facilitated by an experienced and respected mediator, has no obvious deficiencies, and falls well within the range of reasonableness.  Plaintiffs respectfully ask that the Court enter an order granting preliminary approval of the proposed settlement, approving the form and content of the proposed notice and manner of distribution, and scheduling a Fairness Hearing at a time convenient for the Court.

Dated: January 31, 2014

 /s/ Thomas A. Tucker Ronzetti
Robert B. Hemley
Norman Williams
Gravel & Shea, P.C.
76 St. Paul Street, 7th Floor, P.O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
rhemley@gravelshea.com
nwilliams@gravelshea.com

and

Harley S. Tropin (*pro hac vice*)
Thomas A. Tucker Ronzetti (*pro hac vice*)
Kenneth Hartmann (*pro hac vice*)
S. Montaye Sigmon (*pro hac vice*)
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
hst@kttlaw.com
tr@kttlaw.com
krh@kttlaw.com
ms@kttlaw.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Thomas A. Tucker Ronzetti, attorney for Plaintiffs, certify that on January 31, 2014, I served the **MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** on counsel of record through the CM/ECF system and on the following counsel by first-class mail, postage prepaid:

Stephen D. Brody, Esq.
Robert N. Eccles, Esq.
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC 20006


Dated: January 31, 2014                  /s/ Thomas A. Tucker Ronzetti
                                         Thomas A. Tucker Ronzetti (*pro hac vice*)
                                         Kozyak Tropin & Throckmorton, P.A.
                                         2525 Ponce de Leon, 9th Floor
                                         Coral Gables, FL  33134